# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| APFA, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:20-cv-05007 |
| | ) | |
| | ) | |
| UATP MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

## PLAINTIFF APFA, INC.'S MEMORANDUM OF LAW  IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF AGAINST DEFENDANT UATP MANAGEMENT, LLC PURSUANT TO *FED. R. CIV. P.* 65

---

**On the Brief:**

Justin M. Klein, Esq.
Brent M. Davis, Esq.
Andrew P. Bleiman, Esq.

**MARKS & KLEIN, LLP**

Dated: June 16, 2020

## **TABLE OF CONTENTS**

**TABLE OF CONTENTS**………………………………………………………i

**TABLE OF AUTHORITIES**……………………………………………………iii

**INTRODUCTION** ………………………………………………………………1

**FACTUL BACKGROUND** ……………………………………………………….2

    **A.** **Imposition of the Unlawful Membership Program Fees and Costs to APFA Members** ……………..…………………………………..5

    **B.** **The Purported Amendment Materially Alters APFA's Members Rights to Their Detriment** …………………………………………..7

        1.   *New, Undisclosed Fees & Charges* ……………………………7

        2.   *The Arbitration Agreement & Class Action Waiver* …………10

            a.   The Arbitration Agreement ……………………………10

            b.   The Class Action Waiver ………………………………13

**LEGAL ARGUMENT**……………………………………………………15

    **A.** **The Applicable Standards**………………………………………15

        1.   *Choice of Law* …………………………………………..15

        2.   *Ripeness* …………………………………………………...16

    **B**.  **The Court Should Determine Arbitrability and Enforceability of the Arbitration Agreement** ………………………………………..18

    **C.** **The Likelihood of Success on the Merits** …………………………22

        1.   *The Arbitration Agreement is the Product of Fraud* …………22

        2.   *The Arbitration Agreement is Void Because it is Unconscionable*…………………………………………… 24

D.     **Absent an Injunction, APFA and its Members Will Suffer Irreparable Harm** …………………………………………..30

E.     **There Is No Cognizable Harm to UATP Should the Injunction Issue** …………………………………………………..31

F.     **The Public Interest Favors an Injunction Here** …………………31

     1.     *APFA is a Distinct Legal Entity and Has Not Executed the Purported Amendment* ……………………………………….31

     2.     *Arbitration Would Result in Piecemeal, Inconsistent Results*…33

**CONCLUSION** ……………………………………………………...34

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>:

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) ……………………………...20

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009) …………………………….32

*Atalese v. U.S. Legal Services Group, L.P.*,
219 N.J. 430 (N.J. 2014) …………………………………………………………..20

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d
742 (2011) ………………………………………………………………………...32

*Banco Popular N.A. v. Gandi*,
184 N.J. 161 (N.J. 2005) …………………………………………………………..23

*Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*,
181 F.3d 435 (3d Cir. 1999) ………………………………………………………..32

*Cherry Hill Towne Ctr. Partners, LLC v. GS Park Racing, L.P.*,
2019 U.S. Dist. LEXIS 150027 (3d Cir., Sept. 4, 2019) …………………………….17

*Chicago Title Ins. Co. v. Union Ave. Holding, LLC*,
2019 N.J. Super. Unpub. LEXIS 46 (N.J. App. Jan 8, 2019) ………………………….23

*City of Houston v. Guthrie*,
332 S.W.3d 578 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ……………..34

*Defina v. Go Ahead & Jump 1, LLC*,
2018 N.J. Super. Unpub. LEXIS 1303 (N.J. App. June 5, 2018) ……………...19, 20

*DeSantis v. Wackenhut Corp.*,
793 S.W.2d 670 (Tex. 1990) ………………………………………………………23

*Doe v. Banos*,
713 F. Supp. 2d 404 (D.N.J.) aff'd, 416 F. App'x 185 (3d Cir. 2010) ……………...15

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) …………………………………………………………………….. 15

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995) ……...18, 19, 21, 22

*Fogal v. Stature Constr., Inc.*,
294 S.W.3d 708 (Tex. App. 2009) …………………………………………18, 19

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*,
168 N.J. 124 (N.J. 2001) ………………………………………………………..33

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) …………………………….27

*Gladden v. Cadillac Motor Car Div., General Motors Corp.*,
83 N.J. 320, 416 A.2d 394 (1980) …………………………………………………26

*Gras v. Assocs. First Capital Corp.*,
346 N.J. Super. 42, 786 A.2d 886 (App. Div. 2001) ………………………………....27

*Griswold v. Coventry First LLC*,
762 F.3d 264 (3d Cir. 2014) …………………………………………………….32

*Howard v. Diolosa*,
241 N.J. Super. 222, 574 A.2d 995 (App. Div. 1990) …………………………….26

*Iley v. Hughes*,
311 S.W.2d 648 (Tex. 1958) ……………………………………………………34

*In re FirstMerit Bank, N.A.*,
52 S.W.3d 749 (Tex. 2009) ……………………………………………………..23

*In re Kellogg Brown & Root*,
166 S.W.3d 732 (Tex. 2005) ……………………………………………………19

*In re Labatt Food Serv., L.P.*,
279 S.W.3d 640 (Tex. 2003) ……………………………………………………19

*In re Palm Harbor Homes, Inc.*,
195 S.W.3d 672 (Tex. 2006) ……………………………………………....25

*In re Poly-America, L.P.*,
262 S.W.3d 337 (Tex. 2008) ……………………………………………18

*Kos Pharmaceuticals, Inc. v. Andrx Laboratories, Inc.*,
369 F.3d 700 (3d Cir. 2004) ……………………………………………..16, 31

*Lucey v. FedEx Ground Package Sys.*,
2007 U.S. Dist. LEXIS 77454 (D.N.J. Oct. 18, 2007) *rev'd on other grounds* 305
Fed. Appx. 875 (3d Cir 2009) ………………………………………..25, 26, 27

*Martindale v. Sandvik*,
173 N.J. 76 (N.J. 2002) ……………………………………………..19, 20

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) ……………………………19

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*,
511 F.3d 350 (3d Cir. 2007) ……………………………………………16

*Med. Soc'y v. Mottola*,
320 F. Supp. 2d 254 (D.N.J. 2004) ……………………………………………...30

*Metex Mfg. Corp. v. Manson*,
2008 U.S. Dist. LEXIS 25107 (D.N.J. March 28, 2008) …………………………23

*Miller v. Mitchell*,
598 F.3d 139 (3d Cir. 2010) ……………………………………………16

*Muhammad v. County Bank of Rehoboth Beach*,
379 N.J. Super. 222, 877 A.2d 340 (App. Div. 2005) ……………………………..26

*Muhammad v. County Bank of Rehoboth Beach, Delaware*,
189 N.J. 1, 912 A.2d 88 (2005) ……………………………………………28

*N. Jersey Vineyard Church v. Twp. of S. Hackensack*,
2016 U.S. Dist. LEXIS 46398 (D.N.J. April 6, 2016) ………………………...15, 16

*Ohai v. Verizon Communs., Inc.*,
2005 U.S. Dist. LEXIS 25703 (D.N.J. Oct 24, 2005) ……………………..25, 26, 27

*Ohio Cas. Ins. Co. v. Benson*,
87 N.J. 191, 199, 432 A.2d 905 (N.J. 1981) ……………………………………….34

*P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*,
428 F.3d 504 (3d Cir. 2005) …………………………………………………………16

*Rudbart v. North Jersey District Water Supply Commission*,
127 N.J. 344, 605 A.2d 681, *cert. denied*, 506 U.S. 871, 113 S. Ct. 203, 121 L. Ed.
2d 145 (1992) ………………………………………………………………………..28

*Sanchez v. Fitness Factory Edgewater, LLC*,
___ N.J. ____ 2020; 2020 N.J. Unpub. LEXIS 661 (May 28, 2020) ………………6

*Sears, Roebuck & Co. v. Meadows*,
877 S.W.2d 281 (Tex. 1994) …………………………………………………………23

*Sitogum Holdings Inc. v. Ropes*,
352 N.J. Super. 555, 800 A.2d 915 (Ch. Div. 2002) …………………………..25, 26

*Stone v. Lawyers Title Ins. Corp.*,
554 S.W.2d 183 (Tex. 1977) …………………………………………………………23

*United Steelworkers of Am. v. Gulf Navigation Co.*,
363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) ……………………………31

*Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488  (1989) ……………………30, 31

*Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*,
894 F.3d 509 (3d Cir. 2018) ……………………………………………………...17, 18

*Will-Drill Resources, Inc. v. Samson Resources Co.*,
352 F.3d 211 (5th Cir. 2003) …………………………………………………………21

STATUTES:

*Federal Arbitration Act* (9 U.S.C. §§ 1-307) …………………………………..18

9 U.S.C. § 2 ………………………………………………………………………18

<u>RULES</u>:

*Fed. R. Civ. P.* 65 ……………………………………………………………1, 15

Plaintiff APFA, Inc., ("APFA" or "Plaintiff"), by and through its counsel, Marks & Klein, LLP, submit this memorandum of law in support of an Order pursuant to *Fed. R. Civ. P.* 65: (1) declaring this Court shall determine the arbitrability of the APFA's claims; (2) declaring the arbitration agreement null and void for want of consideration; and (3) enjoining Defendant from seeking to enforce the arbitration agreement against any of APFA's members.

## **INTRODUCTION**

Plaintiff seeks injunctive relief to prevent Defendant from compelling arbitration of various disputes where there is no enforceable agreement to arbitrate. This Motion is necessitated by Defendant's May 26, 2020 Notice of Dispute ("Notice of Dispute"), served upon Plaintiff's counsel, which demands compliance with an alleged arbitration provision found in § 4.1 of a purported Amendment to Franchise Agreement (Membership Agreement) ("the Purported Amendment").  In the Notice of Dispute, UATP advised the APFA of its intention to initiate individual actions in Court to compel arbitration against APFA members and demanded the APFA to provide a list of all members to determine which members executed the Purported Amendment.  Here, however, UATP has no right to utilize arbitration, because: (1) the APFA is not a party to the arbitration agreement; (2) Defendant is utilizing these questionable arbitration agreements to circumvent the APFA's members right to associate and bring suit; and (3) the purported arbitration

agreement upon which Defendant attempts to rely was procured through fraud and, critically, lacks independent consideration. As an initial matter, this Court has authority to determine the arbitrability and enforceability of the Purported Amendment, which is challenged in this action. Consequently, this Court's intervention is necessary to protect the status quo and the rights of APFA members nationwide.

In addition, even if the arbitration agreement is found to be valid (which it is not), this matter will nevertheless remain before this Court for adjudication as many members did not execute the Purported Amendment and the APFA would continue to pursue its claim for Declaratory Judgment herein. This, in turn, will open the door for undesirable and disfavored piecemeal actions which undermines judicial economy, will lead to inconsistent results, be extraordinarily time consuming and expensive, and further muddy the waters with respect to the franchisees' rights. This Court should not permit that to happen and should maintain the status quo pending its determination of the enforceability of the Purported Amendment herein and its determination of the merits of the declaratory judgment action.

## **FACTUAL BACKGROUND**[1]

The APFA was organized by its constituent membership and organized under

---

[1]     As the Court is aware, this matter is recently filed, and Defendants have not yet filed a responsive pleading. Nor has discovery begun. APFA draws the facts related herein directly from the Complaint filed in this matter.

the laws of the State of Delaware in 2019 to, *inter alia* foster enhanced franchisor-franchisee relations and communications for the betterment of the franchisee experience and increased opportunity for the franchisees' operational success. The APFA was created because its members held (and continue to hold) commonly themed grievances pertaining to certain practices and operations of UATP, its representatives and principals. The APFA was organized and exists for the purpose of protecting and preserving the rights of Urban Air franchisees and was created to serve as an official voice of the Urban Air franchise community. APFA and its members' concerns generally regard various internal systems, practices and newly implemented mandates that Urban Air has unfairly thrust upon its franchisees. *See* Compl. ¶ 6. Currently, the APFA represents over 50 Urban Air franchised locations throughout the United States. *See* Compl. ¶ 7.

UATP owns and operates a franchise system wherein independent businesses – the franchisees – purchase the right to use UATP's trademarks and trade dress and operational system in connection with their individual Urban Air franchised locations. *See* Compl. ¶¶ 1, 8-9. Urban Air franchisee members of the APFA enjoy substantially similar franchise agreements, which are typically non-negotiable, and received substantially similar franchise disclosure documents ("FDD").[2] *See*

---

[2]    Briefly, the FDD is an accepted format through which a franchisor provides required disclosures about the franchised business opportunity, including information about initial and ongoing fees, how the franchisor, pursuant to the FTC's Franchise Rule, 16 C.F.R. § 436.

Compl. ¶¶ 8, 22.  In April 2019, UATP mandated a new Membership Program.  *See* Compl. ¶ 24.

The Membership Program was followed by the presentation to all existing franchisees, including APFA members, of the Purported Agreement.  The Purported Agreement was presented by Defendant to franchisees in a "take it or else" manner: APFA members were told it was "necessary" to implement the Membership Program and that its terms would only touch and concern the membership program.   The Purported Agreement, and its arbitration agreement, were proffered in pre-printed, non-negotiable and electronic form to all APFA members through DocuSign. Those members who did not execute the Purported Amendment were subjected to frequent, harassing communications from Defendant and threatened with defaults of their franchise agreements.   Defendant initiated the Membership Program without obtaining signatures on all franchisees' Purported Agreements, including several APFA members.  No opportunity was given to bargain with UATP and franchisees were provided little to no time to review the Purported Agreement before the Membership Agreement went into effect and Defendant began levying charges set out therein.

In response to the imposition of the Membership Agreement, the Purported Agreement with its unconscionable arbitration agreement, and other issues which pervade the Urban Air franchise system, APFA initiated this litigation on April 23,

2020.  Defendant, through its counsel sent APFA a Notice of Dispute, and demanded the names of all APFA members so that it could issue individual notices to each member who executed the Purported Amendment.  *See* Affidavit of Andrew P. Bleiman, Esq., Exhibit 1.

This Motion follows.

## A. **Imposition of the Unlawful Membership Program Fees and Costs to APFA Members**

Under the Membership Program, UATP collects *all* revenues derived from the program, and thereafter parcels it out to individual franchisees while retaining a portion of that money for itself in the form of a "Membership Program Fee" and/or "NAF Fee."  *See* Compl. ¶¶ 25-29, 33, Ex. A, B[3].  The relevant franchise agreements, or FDDs through which APFA's members were disclosed, do not disclose a "Membership Program Fee" or "NAF Fee."  *See* Compl. ¶ 32.  In the absence of a contractual obligation to pay a royalty fee – and in the absence of the disclosure of the existing of such ongoing payment in the FDD, Defendant may not charge such a fee.

Yet, and despite the lack of disclosure and in the absence of any contractual obligation to pay these fees, since launching the Membership Program, Defendant has charged a 2.5% Membership Program Fee and a 5% NAF fee to all franchisees.

---

[3]     All references to exhibits shall refer to the Exhibits filed with the Complaint in this action, unless otherwise noted.

*See* Compl. ¶ 33, *see also* Ex. C.  Likewise, Defendant is collecting additional amounts to reimburse itself for the costs of the development and implementation of the Membership Program at an estimated cost of $4,000,000 (or, ~$40,000 per franchised location) despite the fact that no franchisees agreed to pay for this program and which violates the franchise agreements they signed.  *See* Compl. ¶ 34.

Defendant clearly recognized that implementing the Membership Program[4], with its associated fee structure, was unjustified and in violation of all existing franchise agreements.  Consequently, in an effort to mask and ultimately avoid liability for materially breaching the franchise agreements, Defendant promulgated the Purported Amendment.  *See* Compl. ¶ 35, Ex. C.  The Purported Amendment was promulgated under false pretenses and through fraudulent means.  Likewise, the Purported Amendment fails for lack of consideration.

In particular, various communications and pronouncements show UATP materially and affirmatively misrepresented to franchisees that execution of the Purported Amendment related solely to the implementation of the Membership Program and was immediately necessary in order for the franchisee to receive

---

[4]     Per *Sanchez v. Fitness Factory Edgewater, LLC*, ___ N.J. ____ 2020; 2020 N.J. Unpub. LEXIS 661 (May 28, 2020), the New Jersey Supreme Court has ruled the New Jersey Retail Installment Sales Act ("RISA") is applicable to service contracts, such as the Membership Plan agreement.  In light of this ruling, the APFA and its members have additional concerns about the structure of this program and whether, and to what extent, it may subject them to liability.  More, the APFA's members may be required to spend additional resources to bring their businesses into compliance with RISA, a situation they did not anticipate – and which was not disclosed – when they executed their franchise agreements and received their FDDs.

payment of Membership Revenues collected by Defendant. *See* Compl. ¶ 36. This was and is demonstrably false – the Purported Amendment materially alters and modifies APFA's members' franchise agreements in several, material respects and is unenforceable for want of consideration. *See* Compl. ¶ 37.

Strikingly, despite the fact that not all franchisees (including many APFA members) have executed the Purported Amendment *Defendant is still charging the Membership Program Fee and NAF fee* to all franchisees. More, and, critically, all franchisees, regardless of whether they have executed the Purported Amendment, have also received membership revenue payments from UATP. *See* Compl. ¶ 38. This demonstrates that: (a) the Purported Amendment was *not* necessary in order to facilitate the Membership Program and (b) that UATP is charging some franchisees undisclosed royalty fees in violation of the express terms of their franchise agreements.

**B.**   **The Purported Amendment Materially Alters APFA's Members Rights to Their Detriment.**

The Purported Amendment materially alters significant portions of the existing franchise agreements and, in so doing, substantially and negatively alters the franchisees rights without just compensation in the foregoing manner:

1.   *New, Undisclosed Fees & Charges*

It is unlawful for a franchisor to levy fees not disclosed in its FDD and not contained in the franchise agreements executed by the franchisees. Yet, and as

described above, UATP has included two, new fees: the Membership Program fee and the NAF Fee.

16 C.F.R. § 436.5(f) expressly states that:

> Item 6: Other Fees. Disclose, in the following tabular form, **all other fees that the** <u>franchisee</u> **must pay to the** <u>franchisor</u> **or its** <u>affiliates</u>**, or that the** <u>franchisor</u> **or its** <u>affiliates</u> **impose or collect in whole or in part for a third party**. State the title "OTHER FEES" in capital letters using bold type. Include any formula used to compute the fees.

> If fees may increase, disclose the formula that determines the increase or the maximum amount of the increase. For example, a percentage of gross sales is acceptable if the <u>franchisor</u> defines the term "gross sales."

*See* 16 C.F.R. § 436.5(f) (emphasis added).

In the 2016 and 2017 FDDs, respectively, there is no Item 6 disclosure for an "NAF Fee" a "Membership Program fee," or "Direct Costs" associated with the Membership Program (because the program itself was never disclosed.)  Similarly, § 6 of the form franchise agreement sets forth the fees which Urban Air is authorized to charge franchisees.  *See* Ex. A, B, respectively.  For the 2016 FDD, §§ 6 B and 6 C of the Urban Air franchise agreement state that UATP is authorized only to charge a Royalty Fee equal to "6% of weekly Gross Sales" and a Development Fund Fee of "1% of Weekly Gross Sales." *See* Ex. A.  For the 2017 FDD, UATP has done away with the Development Fund Fee, but increased the Royalty Fee to 7% of weekly Gross Sales per § 6 B.  *See* Ex. B.

In addition, the 2016 FDD's exemplar franchise agreement identifies an

"Administrative Fee" which is defined as the "[p]ro-rata portion of call centers hourly rate plus a $5.00 commission." *See* Ex. A.  The 2017 FDD has an identical provision in § 6 C.  *See* Ex. B.  Clearly, neither exemplar franchise agreement – and neither FDD – discloses a "Membership Program Fee" or "NAF Fee."  Moreover, no existing franchise agreements contain these new fees, but all contain the fees disclosed in the 2016 and 2017 FDDs.

In the Proposed Amendment, and without prior disclosure, UATP purposes to levy the Membership Plan fee and NAF fee, as well as certain "Direct Costs" which "shall equal your pro rata share of *Franchisor's cost of operating the Membership Program*…which costs include, but are not limited to, the following: credit card processing fees, collections management, and hosting (AWS)." *See* Ex. C (emphasis added).  **None** of these fees were ever disclosed to APFA's members and they represent nothing more, or less, than UATP foisting its costs upon APFA's members without notice and in violation of their rights under the franchise agreement.  Without question, these fees and assessments represent a real, pecuniary benefit to Defendant and APFA members received nothing in return for the payment of these fees.

The Direct Costs are particularly inequitable because the Defendant is requiring APFA's members to directly pay for the unlawful program it created without their consent.  This is *on top of the 2.5% Membership Program Fee* UATP

collects.  APFA's members derive no benefit from paying once, much less *twice*, for an unlawful program they did not ask for, or consent to participate in.  Indeed, there is little, if any, demonstrable benefit to APFA's membership in a program that reduces revenue at the unit level and increases costs at the same time.

With respect to the NAF Fee, there is no benefit to a program that **does not exist, has no staff**, and **is not providing benefit to APFA's members**.  *See* Compl. ¶ 61.  The "NAF Fee" is a pure money grab that is not authorized by the existing franchise agreements and provides no benefit to APFA's membership.  Moreover, the Purported Amendment **deliberately** blurs the lines between a national marketing fund designed to promote the Membership Program and a broader, general national marketing plan.  Critically, the Purported Amendment explicitly states that

> "While we intend to invest the NAF for the benefit of all franchisees, we have no obligation to spend any amount on advertising in an area in which a franchisee is located or to ensure that any particular franchisee benefits directly or pro rata from the placement of advertising."

*See,* Ex. C.

By contrast, the FDDs and existing franchise agreements *already* speak to marketing via the properly disclosed *local* marketing requirement.  Indeed, APFA's members already are required to devote 5% of their Gross Sales to local marketing, and, notwithstanding, UATP's CEO, Michael Browning's repeated representations to Urban Air franchisees that they will not be required to spend more than $7500 per month on advertising, irrespective of the Gross Sales.

2.     *The Arbitration Agreement & Class Action Waiver*

Perhaps most egregious, the Purported Amendment includes an arbitration agreement not present in the existing franchise agreements and, critically, not included in the FDDs that APFA members were disclosed with, and which also purports to preclude franchisees from bringing a class action – which is a considerable right that was possessed by franchisees in the franchise agreements. *See* Ex. C.  Neither the arbitration agreement nor the class action waiver are supported by independent consideration and are, therefore, void.

a.     <u>The Arbitration Agreement</u>

The arbitration agreement is deliberately overbroad and substantially alters the terms of the existing franchise agreements.  Sec. 4.1 of the Purported Amendment reads:

**4.1 <u>ARBITRATION. TO THE FULLEST EXTENT PERMITED BY LAW, ANY DISPUTE BETWEEN (A) YOU AND ANY OTHER OWNER AND (B) FRANCHISOR AND ITS AFFILIATES, AND THEIR RESPECTIVE SUBSIDIARIES, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, SHAREHOLDERS, DESIGNEES, AND REPRESENTATIVES (COLLECTIVELY, THE "FRANCHISOR INDEMNITEES") ARISING UNDER, OUT OF, IN CONNECTION WITH, OR IN RELATION TO (I) ANY CLAIM, (II) THE NEGOTIATION OF THIS AGREEMENT (INCLUDING ANY OTHER AGREEMENT BETWEEN YOU AND FRANCHISOR), (III) THE OFFER AND SALE OF THE FRANCHISE OPPORTUNITY, (IV) REPRESENTATIONS MADE PRIOR TO THE EXECUTION OF THIS AGREEMENT, AND (V) THIS AGREEMENT OR ANY OTHER AGREEMENT BETWEEN YOU AND FRANCHISOR, ANY ATTACHMENTS THERETO, OR THE ENFORCEABILITY OF THIS AGREEMENT MUST BE SUBMITTED TO BINDING ARBITRATION BEFORE A SINGLE ARBITER WITH THE AMERICAN ARBITRATION ASSOCIATION PURSUANT TO ITS COMMERCIAL INDUSTRY RULES IN EFFECT AT THE TIME THE ARBITRATION DEMAND IS FILED.</u>**

**ANY ARBITRATION DEMAND WILL BE SUBJECT TO THE FEDERAL ARBITRATION ACT. FRANCHISEE, THE OWNERS, AND THE FRANCHISOR INDEMNITIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**

Strikingly, and in addition to rendering disagreements under the Purported Amendment subject to arbitration, the arbitration agreement compels arbitration of *all* disputes between APFA members and Defendant, including "(I) any claim…(III) the offer and sale of the franchise opportunity. . ., and (V) this agreement or any other agreement between you and franchisor, any attachments thereto, or the enforceability of this agreement…" *See* Ex. C, § 4.1.  Despite the fact that Defendant represented to APFA's members (and all Urban Air franchisees) that the Purported Amendment was "necessary" to implement the Membership Program, it is clear UATP has purposefully over drafted (and underrepresented) the scope of the arbitration agreement in order to wrest critical rights from APFA's members without consideration and appropriate disclosures.

In the existing franchise agreements, which are substantially similar to the exemplars annexed to the Complaint in Exhibits A and B, there is *no arbitration agreement*.  For example, in both the 2016 and 2017 FDDs, which contain the exemplar agreements, Defendant elected to include provisions relating to, *inter alia*, governing laws, forum, and venue selections, waivers of jury trial, and limitations on damages, but *did not include an arbitration or mediation provision*.  *See* Ex. A,

§ 23, p. 109-110, Ex. B, § 23, p. 112-114.

Even if there were some argument that the arbitration agreement, as it pertains to the Purported Amendment and the Membership Program, was supported by valid consideration – which it is not – Defendant has reached far beyond the scope of the Purported Amendment and seeks now to rewrite essential terms of APFA's members franchise agreements.  This Court should make no mistake – giving up the right to utilize the courts is no small thing.  Defendant insists APFA's members surrender their fundamental right to the courts without consent or providing valuable consideration.  This failure of consideration mitigates strongly against the arbitration agreement's validity.

Further, and to the extent APFA members' refusal to execute the Purported Amendment has subjected them to harassment or triggered a notice of default under its existing franchise agreement, whereby the franchisee may lose its business, this Court should find the Purported Amendment an unconscionable contract of adhesion.

　　　　　b.　　The Class Action Waiver

Strikingly, the arbitration agreement's overreach is not limited to the subject matter of the dispute, but also *in how disputes may be brought*.  In pertinent part, the arbitration agreement says:

Further, unless all parties agree otherwise, the arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of a representative, joint, or class proceeding.

*See,* Ex. C.  Class actions (and to a lesser extent, consolidated actions) are favored means by which multiple, aggrieved plaintiffs may bring suit against a defendant (or defendants) where, *inter alia*, they share common claims.  Courts nationwide recognize a class action is often the most efficient means by which to prosecute these claims because it removes the threat of piecemeal, inconsistent litigation, permits the defendant to consolidate its resources, and thereby maximizes judicial efficiency.  In franchising, in particular, where franchisees share common legal rights under uniform, largely non-negotiable contracts and as a result share common claims against their franchisor, class actions and consolidated actions have a particular utility.  Here, and much like UATP's overbroad arbitration agreement itself, the class action waiver offers absolutely no benefit to APFA's members.

However, in 2019, Defendant promulgated the Purported Amendment, which contains the above provision, a material alteration of the prior, existing franchise agreements and pre-purchase disclosures.  Therefore, the arbitration agreement materially alters Urban Air franchisees and APFA members' rights under the existing franchise agreements, yet no consideration is given for this mandated change of position.  For these reasons, the Court should find Defendant has provided no benefit to APFA's members for the arbitration agreement, while simultaneously

ensuring UATP can avoid public scrutiny of its practices through private arbitrations.  This is no small benefit to Defendant.

## LEGAL ARGUMENT

**A.     The Applicable Standards**

1.     *Choice of Law*

Under the express terms of the existing franchise agreements, as well as the exemplars disclosed in the 2016 and 2017 FDDs (*see* Ex. A, B), Texas state law governs the franchise agreements, "without regard to it [sic] conflicts of law principles."  *See* Ex. A, § 23A, Ex. B, § 23A.  Therefore, Texas law applies, and the analysis herein will focus on Texas and New Jersey law.

2.     The Standard of Review for Injunctive Relief

*Fed R. Civ. P.* 65 "empowers district courts to grant preliminary injunctions." *N. Jersey Vineyard Church v. Twp. of S. Hackensack*, 2016 U.S. Dist. LEXIS 46398, *5 (D.N.J. April 6, 2016) (*quoting Doe v. Banos*, 713 F. Supp. 2d 404, 410 (D.N.J.) aff'd, 416 F. App'x 185 (3d Cir. 2010)).  This Court has the discretion to grant or deny injunctive relief.  *Id*. (*citing eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)).

The grant or denial of a preliminary injunction rests in the sound discretion of the trial court. To prevail on a motion for a preliminary injunction, the moving party must establish the following: (i) likelihood of success on the merits; (ii) that it will

suffer irreparable harm if the injunction is denied; (iii) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (iv) that the public interest favors such relief.  *See McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 356-357 (3d Cir. 2007); *Kos Pharmaceuticals, Inc. v. Andrx Laboratories, Inc.,* 369 F.3d 700, 708 (3d Cir. 2004); *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010).[5]  "The burden lies with the [movant] to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."  *N. Jersey Vineyard Church v. Twp. of S. Hackensack*, 2016 U.S. Dist. LEXIS at * 6 (*quoting P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005)) (citations omitted).

Evaluating these factors in the instant matter clearly demonstrates that APFA is entitled to a preliminary injunction.

2.    *Ripeness*

With respect to declaratory actions, the Court must also be sure the controversy is ripe for adjudication.  While '[t]he contours of the ripeness doctrine are particularly difficult to define with precision when a party seeks a declaratory judgment,' a declaratory judgment action is ripe for adjudication if: (1) the parties' interests are sufficiently 'adverse'; (2) the judgment of the court will be 'conclusive';

---

[5]    Though a choice of law provision is generally applicable to substantive, not procedural, law, APFA notes Texas law is substantially similar with respect to the elements necessary to preliminary injunctive relief.

and (3) that judgment will have 'practical utility.'" *Cherry Hill Towne Ctr. Partners, LLC v. GS Park Racing, L.P.*, 2019 U.S. Dist. LEXIS 150027, *6-7 (3d Cir., Sept. 4, 2019) (*quoting Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 522 (3d Cir. 2018)).

The present dispute is ripe for adjudication: the APFA's claims, on behalf of its members, speak to real-world controversies where UATP is actively engaged in numerous material breaches of the existing franchise agreements and substantially undermining not only the value of APFA members businesses, but also their autonomy as independent franchisees.  In addition, UATP has already placed APFA on notice it intends to enforce its unconscionable and unenforceable arbitration agreement.  *See* Bleiman Aff., Ex. A.  APFA and UATP are "adverse" parties, under the circumstances.

Similarly, rendering a declaratory judgment in this action would be conclusive on the issues asserted.  "A claim is fit for adjudication if a declaratory judgment would in fact determine the parties' rights, as distinguished from an advisory opinion based on a hypothetical set of facts. Cases presenting predominately legal questions are particularly amenable to a conclusive determination." *Wayne Land & Mineral Grp.*, 894 F.3d at 523.  With respect to the practical utility analysis, the Third Circuit has held this prong is met where "the judgment would materially affect the parties and serve to clarify legal relationships so that plaintiffs can make responsible

decisions about the future." *Id*. at 524

Therefore, and evaluating these factors, this Court should find the matter ripe for adjudication and should enjoin arbitration of individual franchisee claims pending the determination of the merits herein.

**B.**   **This Court Should Determine Arbitrability and Enforceability of the Arbitration Agreement**

The arbitration agreement contained in the Purported Amendment is the product of fraud and unenforceable. Therefore, and in the absence of an express commitment to determine arbitrability in the arbitration agreement itself, this Court should determine arbitrability and enforceability of the arbitration agreement.

As a threshold matter, the arbitration agreement found in the Purported Amendment is subject to the Federal Arbitration Agreement ("FAA"), 9 U.S.C.S. §§ 1-307. *See* Ex. C., § 4.1. [6] The FAA permits a party to challenge the enforceability of the arbitration agreement on any "grounds as exist at law or in equity for revocation of any contract." *Fogal v. Stature Constr., Inc.,* 294 S.W.3d 708, 715 (Tex. App. 2009) (*quoting* 9 U.S.C.S. § 2); *see also In re Poly-America, L.P.,* 262 S.W.3d 337, 347 (Tex. 2008) (*citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995)) "In determining the validity of an agreement to arbitrate under the FAA, courts must first apply state law

---

[6]   "**ANY ARBITRATION DEMAND WILL BE SUBJECT TO THE FEDERAL ARBITRATION ACT.**" (emphasis in original)

governing contract formation.")). "[O]rdinary principles of state contract law determine whether there is a valid agreement to arbitrate." *Id*. (*citing In re Kellogg Brown & Root*, 166 S.W.3d 732, 738 (Tex. 2005); *see also In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2003).

Under New Jersey law, the analysis is similar.  "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Martindale v. Sandvik*, 173 N.J. 76, 85-86 (N.J. 2002) (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985, 993 (1995) (*citing Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62-63 & n. 9, 115 S. Ct. 1212, 1218-19 & n. 9, 131 L. Ed. 2d 76, 87-88 & n. 9, (1995))) (string cite omitted).

New Jersey courts require that the waiver of the right to sue must be "sufficiently clear to place a consumer on notice that he or she is waiving a constitutional or statutory right is not specific to arbitration provisions," which means that "…any contractual 'waiver of rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." *Defina v. Go Ahead & Jump 1, LLC*, 2018 N.J. Super. Unpub. LEXIS 1303, * 10-11 (N.J. App. June 5, 2018) (*citing Atalese v. U.S. Legal Services Group, L.P.*, 219 N.J. 430, 447 (N.J.

2014))[7].  That said, New Jersey law will not permit this Court to "decide that a contract is fair enough to enforce all its basic terms . . . but not fair enough to enforce its arbitration clause" because "that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the Act's language and Congress' intent." *Martindale* at 86 (*quoting Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281, 115 S. Ct. 834, 843, 130 L. Ed. 2d 753, 769 (1995)).

In the present case, the Purported Amendment's arbitration agreement is silent as to the question of who determines arbitrability.  *See* Ex. C, §§ 4.1-4.3. For example, § 4.1 outlines the numerous types of disputes which the arbitrator may hear, and further identifies, for example, the scope of the arbitrator's authority.  § 4.2 speaks to claims *not* subject to arbitration (which decidedly favor Defendant).  § 4.3 is boilerplate language, in bold print, which purports to establish that (a) the franchisee and Defendant negotiated the arbitration agreement, and (b) that if the arbitration agreement is somehow found to be void, the Purported Amendment itself is void[8].

---

[7]     *Defina* speaks to an arbitration provision found in a consumer-facing agreement from one of Urban Air's competitors, Sky Zone. In that dispute, the New Jersey Supreme Court upheld a prior ruling finding the arbitration agreement under review "did not clearly and unmistakably inform the party signing it that he or she is agreeing to waive their right to be heard in court or their constitutional right to a trial by jury. Nor does the clause explain what arbitration is or how it differs from bringing a claim in court."  *Defina v. Go Ahead & Jump1, LLC*, 2018 N.J. Super. Unpub. at * 11.

[8]     4.3    **MATERIAL   INDUCEMENT   FOR   FRANCHISOR.   FRANCHISEE ACKNOWLEDGES AND AGREES THAT THIS AMENDMENT IS ENTERED INTO**

There is no mention – in a document drafted by UATP and at its behest – of who may determine whether arbitrability itself is subject to arbitration. Absent an express provision, this Court must, under the FAA and established United States Supreme Court precedent, find that arbitrability is subject to the independent review of this Court. *First Options* at 947 (concluding that, "because the Kaplans did not clearly agree to submit the question of arbitrability to arbitration… the arbitrability of the Kaplan/First Options dispute was subject to independent review by the courts.") Thus, this Court determines whether the arbitration agreement is void for fraud as a matter of law.

Under Texas law and the FAA, the determination that a contract containing an arbitration clause is fraudulent does not automatically render the arbitration agreement void. *Id*. at 719 (*citing Will-Drill Resources, Inc. v. Samson Resources Co.,* 352 F.3d 211, 219 (5th Cir. 2003) (applying severability doctrine). The determination of whether the arbitration agreement was *also* obtained through fraud is a question for the trial court "when it is determining whether to compel

---

**VOLUNTARILY AND IS NOT THE PRODUCT OF COERCION ON THE PART OF FRANCHISOR. THE BINDING ARBITRATION, WAIVER OF CLASS ACTION, AND OTHER PROVISIONS OF THIS SECTION 4 ARE A MATERIAL INDUCEMENT FOR FRANCHISOR TO ENTER INTO THIS AMENDMENT. IF ANY PROVISION OF THIS SECTION 4 IS DEEMED UNENFORCEABLE FOR ANY REASON, THERE WILL HAVE BEEN A FAILURE OF CONSIDERATION DELIVERED BY FRANCHISEE TO FRANCHISOR FOR THIS AMENDMENT, AND THIS AGREEMENT WILL HAVE FAILED OF ITS ESSENTIAL PURPOSE, THEREBY ENTITLING FRANCHISOR TO VOID THIS AMENDMENT AT ITS OPTION.** (emphasis in original)

arbitration." *Id.* (*citing First Options of Chicago, Inc.*, 514 U.S. at 943, 115 S. Ct. at 1924). Critically, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options* at 945 (citations omitted).

Therefore, this Court is well within its rights to determine the scope of claims subject to arbitration agreement in the Purported Amendment and should enjoin arbitration of individual claims pending the determination of the merits herein.

## C.   **The Likelihood of Success on the Merits**

APFA is likely to succeed on the merits of its claim that that Purported Amendment and its arbitration agreement are unenforceable.  As a threshold matter, the present motion seeks limited relief: that this Court enjoin UATP from attempting to enforce arbitration agreements of dubious validity (at best) until such time as this Court has rendered its decision as to whether the arbitration provision is enforceable. And, relatedly, whether enforcement of the arbitration provision (assuming it is valid against those franchisees who executed the Purported Amendment) should be enjoined until this Court reaches a decision on the merits of the declaratory judgment action filed by APFA.  For the reasons set forth below, APFA is likely to succeed on the merits of this motion.

### 1.   *The Arbitration Agreement is the Product of Fraud*

Under the laws of the State of Texas, the elements of fraud are "a material

misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, *which was intended to be acted upon*, which was relied upon, and which caused injury." *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994) (*quoting DeSantis v. Wackenhut Corp*., 793 S.W.2d 670, 688 (Tex. 1990), (*citing Stone v. Lawyers Title Ins. Corp*., 554 S.W.2d 183, 185 (Tex. 1977) (emphasis added))).[9]   The elements for fraudulent inducement are the same as common law fraud in both New Jersey and Texas. *Compare In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2009) and *Chicago Title Ins. Co. v. Union Ave. Holding, LLC*, 2019 N.J. Super. Unpub. LEXIS 46, *12 (N.J. App. Jan 8, 2019) (*quoting Metex Mfg. Corp. v. Manson,* 2008 U.S. Dist. LEXIS 25107, at *4 (D.N.J. March 28, 2008)).

As set forth in the Complaint, UATP made numerous, false representations of fact concerning, among other things, the nature of the Membership Program, the necessity of executing the Purported Amendment in order to participate in the Membership Program, and the contents and import of the Purported Amendment. *See* Compl. ¶¶ 35-37.   These promises and statements also applied to the arbitration agreement contained within the Purported Amendment with equal force.   For example, UATP intended franchisees like the APFA membership believe the

---

[9]     This standard is substantially identical to New Jersey state law.  *See Banco Popular N.A. v. Gandi*, 184 N.J. 161, 172 (2005).

Purported Amendment's arbitration provision was limited only to the disputes due to the Membership Plan.  However, Defendant knew these statements were false when they were made.  The arbitration agreement, in reality, significantly overreaches and fundamentally alters APFA's members rights as enjoyed under their existing franchise agreements.

APFA's members, in part, executed the Purported Amendment because they were already members in the system who relied upon their franchisor's claim that the Purported Amendment would not materially alter the terms of the franchise agreements they signed, but rather cover only a new program – the Membership Plan.  This was demonstrably false and APFA's members have suffered the loss of key, contractual rights as a result, including the right to freely associate and to bring claims in a court of law.

For these reasons, the Court should find the arbitration agreement unenforceable because it was procured through fraud.

2.      *The Arbitration Agreement is Void Because it is Unconscionable*

Even if the Court does not invalidate the arbitration agreement because it was procured through fraud, the Court should find it void because it is both procedurally and substantively unconscionable.  From a procedural perspective, the arbitration agreement was and is a contract of adhesion and procured via fraud.  Substantively, APFA members received no consideration for surrendering their right to sue and

freely associate.   Therefore, this Court should find the arbitration is void and unenforceable because it is unconscionable.

New   Jersey   courts   require   both   procedural   and   substantive unconscionability[10].  *Ohai v. Verizon Communs., Inc.*, 2005 U.S. Dist. LEXIS 25703, * 12 (D.N.J. Oct 24, 2005).  Procedural unconscionability relates to unfairness in the formation of a contract.  *Id.* (*citing Sitogum Holdings Inc. v. Ropes*, 352 N.J. Super. 555, 564, 800 A.2d 915 (Ch. Div. 2002) (citations omitted)).  It is found where "one of the parties lacked a meaningful choice in entering the agreement."  *Lucey v. FedEx Ground Package Sys*., 2007 U.S. Dist. LEXIS 77454, *14 (D.N.J. Oct. 18, 2007) *rev'd on other grounds* 305 Fed. Appx. 875 (3d Cir 2009) (citation omitted). Procedural unconscionability "can be shown 'by a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.'"  *Id* at *12-13 (*citing Sitogum Holdings* at 564-65).

On the other hand, substantive unconscionability goes to the "substance of the agreement and is characterized by 'excessively disproportionate terms.'"  *Id*.  Courts will look to "terms so one-sided they shock the court's conscience."  *Id*.  "An

---

[10]      Texas State courts permit a showing of *either* procedural *or* substantive unconscionability, *or* both.  *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677-679 (Tex. 2006).  Further, Texas law is substantially similar to New Jersey State law on the issue of substantive and procedural unconscionability in general.

arbitration provision is substantively unconscionable when it unreasonably favors the party with greater bargaining power … or when it is against public policy. *Lucey* at *18-19 (citation omitted).

Unconscionability is determined on a continuum – egregious procedural unconscionability will overcome minor substantive unconscionability (and vice versa). *Id*. (*citing Muhammad v. County Bank of Rehoboth Beach*, 379 N.J. Super. 222, 237, 877 A.2d 340 (App. Div. 2005) (*citing Sitogum Holdings*, 352 N.J. Super. at 565-67)). Critically, whether a provision is unconscionable is an issue for the Court to determine. *Id*. (*citing Gladden v. Cadillac Motor Car Div., General Motors Corp.,* 83 N.J. 320, 337, 416 A.2d 394 (1980). The party claiming the arbitration provision is unconscionable bears the burden of persuasion. *Id*. (*citing Howard v. Diolosa*, 241 N.J. Super. 222, 230, 574 A.2d 995 (App. Div. 1990)).

This some striking similarities to *Lucey*, where this Court found an arbitration agreement unconscionable. There, FedEx Ground ("FedEx") hired plaintiffs as drivers and directed them to purchase trucks to operate their routes. Only after training and securing vehicles were plaintiffs handed arbitration agreements, which they were given no time to review before beginning their employment. *Lucey* at *2. This Court found that FedEx' contract was adhesive but noted that adhesion

contracts are not *per se* unconscionable.  *Id*. at *14 (citation omitted).[11]  Similarly, the *Lucey* court found that unequal bargaining power and financial necessity, of themselves, were likewise not *per se* unconscionable.  *Id*. (citations omitted); *see, also*, *Ohai* at * 15 (*citing  Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 33, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) ("Mere inequality in bargaining power . . . is not sufficient reason to hold that arbitration agreements are never enforceable in the employment context")).

However, the *Lucey* court found that the plaintiffs had a lack of meaningful choice when presented with the arbitration agreement.  *Lucey* at *15.  The court reviewed the evidence and determined that the plaintiffs were forced to sign an arbitration agreement, "without an opportunity to read it thoroughly, review it with a lawyer, or negotiate any changes to it. These circumstances constitute an absence of meaningful choice."  *Id*. at 18.  This reasoning applies to the present case.

Here, APFA's members were already heavily invested in their Urban Air franchise units and provided with the Purported Amendment and its arbitration agreement in late April 2020.  APFA's members were told the Purported Agreement was necessary to implement the Membership Program and encouraged to sign it immediately.  APFA members who did not sign the Purported Agreement were

---

[11]     *Lucey* is a New Jersey District Court case applying Pennsylvania law.  However, New Jersey law is in accord with its sister state on this point. *See Gras v. Assocs. First Capital Corp*., 346 N.J. Super. 42, 48, 786 A.2d 886 (App. Div. 2001); *Ohai, supra* at *15.

harassed and threatened with the loss of their business.   Regardless, Defendant implemented the Membership Program within days, whether franchisees signed it or not.    Simply, there was no meaningful opportunity to review the Purported Agreement and arbitration agreement with, or without, counsel and there were no negotiations.    For all these reasons, then, this Court should find procedural unconscionability exists in the proffer and execution (where applicable) of the arbitration agreement.

Where, as here, a contract of adhesion is present, this Court must engage in a "careful, fact sensitive examination into substantive unconscionability." *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 16, 912 A.2d 88 (2005)[12].  Courts will analyze the following factors: (1) the subject matter of the contract; (2) the parties' relative bargaining positions; (3) the degree of economic compulsion motivating the "adhering" party; and (4) the public interests affected by the contract.  *Muhammad*, 189 N.J. 15-16 (*quoting Rudbart v. North Jersey District Water Supply Commission*, 127 N.J. 344, 356, 605 A.2d 681*, cert. denied*, 506 U.S. 871, 113 S. Ct. 203, 121 L. Ed. 2d 145 (1992)).

In the present case, the arbitration is clearly adhesive.   The arbitration agreement's subject matter is wide-ranging and affects not only the Purported

---

[12]    This decision was abrogated by the FAA, but the analysis on contracts of adhesion remains sound and undisturbed.

Amendment's language, but also the existing franchise agreements enjoyed by APFA's members.[13]   Franchisees are at a marked disadvantage with respect to bargaining with Defendant, because Defendants' franchise agreements are, themselves, strongly adhesive and require franchise compliance with UTAP's operations manual and system requirements: the Membership Plan was introduced as a new system requirement which APFA's members were obligated to follow.  As set forth above, the degree of adhesion here is exceedingly high.  Finally, and as set forth elsewhere herein, there are strong public policy reasons for barring class action waivers.

In addition, substantive unconscionability is shown where an arbitration provision unreasonably favors the party with stronger bargaining position.  *See Lucey* at *18-19.  The arbitration provision here is decidedly one-sided.  While franchisees are effectively limited to bringing any and all claims in single arbitration, Defendant has reserved several categories of claims as exempt from arbitration.  One, in particular, stands out:

> 4.2.6 Claims, including claims by an affiliate of Franchisor, seeking recovery or any other remedy based on Franchisee's failure to pay any moneys due under this Agreement, any agreement with an affiliate of Franchisor, or any unpaid invoices owed to an affiliate of Franchisor when due.

*See* Ex. C

---

[13]     Strikingly, the existing franchise agreements (and the exemplars provided to this Court) do not mention arbitration in any way.

§ 4.2.6 exempts Defendant from arbitrating claims for damages due to non-payment of money due and owing under the Purported Amendment, which is intended to modify the *entire* franchise agreement, as well as any other agreements made by franchisees with approved vendors. Clearly, UTAP has reserved for itself a lower-cost alternative to arbitration which it denies franchisees. This strongly indicates the arbitration agreement is unreasonably harsh with respect to the franchisees to the point of unconscionability.

The Court should find, based on the foregoing, that the arbitration agreement is procedurally and substantively unconscionable and deem it unenforceable as a matter of law.

**D.** **Absent an Injunction, APFA and its Members Will Suffer Irreparable Harm**

The second factor a Court must consider before granting a preliminary injunction is the extent to which the plaintiff will suffer irreparable injury if such relief is denied. *Med. Soc'y v. Mottola*, 320 F. Supp. 2d 254, 269 (D.N.J. 2004) (citations omitted). Here, APFA's members will suffer irreparable injury if the injunction is not issued. This is so because (a) if UATP is permitted to compel arbitration among certain of its members, it will require members to arbitrate claims despite the fact that members never agreed to arbitrate and did not receive consideration for this purported agreement; (b) individual arbitrations will likely result in a patchwork of results; and (c) individual franchisees would be required to

spend considerable monies in connection with such proceedings even though they never agreed to arbitrate in the first instance.  This is a clear, present danger to the APFA membership, who are already in an undesirable bargaining position against a franchisor who materially alters the franchise agreement with impunity.  For these reasons, the second prong of the *Kos Pharms* test is met.

## E.   There Is No Cognizable Harm to UATP Should the Injunction Issue

Defendant cannot reasonably claim it will be harmed if this Court issues the requested injunction because the arbitration agreement is seeks to enforce is highly suspect and potentially void *ab initio*.  As noted above, the arbitration agreement was procured via fraudulent misrepresentations.   Moreover, the Purported Amendment and arbitration agreement contained therein are invalid because they lack consideration.  In the face of these facts, the Court should have little difficulty finding this factor favors APFA.

## F.   The Public Interest Favors an Injunction Here

1.   *APFA is a Distinct Legal Entity and Has Not Executed the Purported Amendment*

In the event the Court does not find that the Arbitration Agreement is the product of fraud, this Court should still enjoin UATP from seeking to enforce it against those APFA and its members who executed the Purported Amendment.

A non-signatory cannot be compelled to arbitrate because arbitration "is a matter of consent, not coercion." *Id.* at 143 (quoting *Volt Info. Scis. v. Bd. of Trs. of*

*Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).  A "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  "[C]ourts must place arbitration on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (citations omitted).  In the Third Circuit, a party who has not signed an arbitration agreement cannot be compelled to arbitrate its claims. *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014) (*citing Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)).  That said, "a non-signatory may be bound by an arbitration agreement if '"traditional principles" of state law allow a contract to be enforced by or against nonparties to the contract.'" *Id.* (*quoting Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009)).

Here, there can be no argument that APFA is not subject to the Purported Amendment and its arbitration agreement.  APFA is an association of franchisees in the Urban Air system dedicated to, *inter alia*, improving franchisor/franchisee relations.[14]  Moreover, Defendant admits it knows not all APFA members executed the Purported Amendment and are allegedly subject to the arbitration agreement. *See* Bleiman Aff., Ex. 1.  Nor are there any viable "traditional principles" of contract

---

[14]     APFA has associational standing to bring the claims set forth in the Complaint.

law which would subject APFA to the arbitration agreement (which APFA does not acknowledge is valid insofar as it is the product of fraud and is void for lack of consideration.)  For example, APFA has not acted in reliance upon the arbitration agreement.  Nor has APFA received a third-party benefit from it.  Likewise, APFA has not acted as any franchisee's agent with respect to the subject matter of the Purported Amendment or the arbitration agreement contained therein.  Therefore, and for the foregoing reasons, APFA cannot be compelled to arbitrate this dispute by UATP.

APFA's members should not be subjected to arbitration where, as noted above, the arbitration provision is heavily suspect.  As a matter of sound public policy and well-settled law, courts will not enforce an arbitration agreement against a party who has not executed an arbitration agreement.  Where, as here, the propriety of the arbitration agreement itself is in question *and* the issue of arbitrability was not reserved for arbitration, the public's interest is best served by permitting the Court to handle this dispute and provide clarity for all parties concerned moving forward.

2.    *Arbitration Would Result in Piecemeal, Inconsistent Results*

New Jersey, and Texas, public policy favors consolidated litigation over piecemeal litigation.  *See, e.g. Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 137 (N.J. 2001) ("[j]ust as we view piecemeal litigation as anathema, we also look with disfavor upon the unnecessary bifurcation of disputes

between judicial resolution and arbitration.") (*quoting Ohio Cas. Ins. Co. v. Benson*, 87 N.J. 191, 199, 432 A.2d 905 (1981))); "Piecemeal litigation is generally disfavored in this state." *City of Houston v. Guthrie*, 332 S.W.3d 578, 593 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (*citing Iley v. Hughes*, 311 S.W.2d 648, 651 (Tex. 1958) ("Our courts have always frowned upon piecemeal trials, deeming the public interest, the interests of litigants and the administration of justice to be better served by rules of trial which avoid a multiplicity of suits.").

As set forth in greater detail above, if this Court enforces the arbitration agreements in the Purported Amendment against those APFA members who executed that document, the risk of inconsistent results and piecemeal litigation is manifestly increased.  This does not serve the public's interest in proper resolution of disputes among the parties and, strikingly, wastes the parties' and the Court's resources for no valid purpose.  For one thing, it is highly questionable whether the arbitration agreements are enforceable – a question APFA reasonably believes will be resolved in its favor, as argued elsewhere herein.  For another, many APFA members have <u>not</u> signed the Purported Agreement, and are not subject to the arbitration agreement contained within it, their claims will remain before this Court regardless of whether the arbitration agreements are valid.

## <u>CONCLUSION</u>

For the reasons set forth at length herein, Plaintiff APFA Inc. respectfully

requests this Court GRANT, its motion and issue an injunction preventing Defendant UATP Management, LLC from seeking to compel arbitration against individual APFA members because the arbitration agreements in the purported Amendment to Franchise Agreement (Membership Program) are invalid, non-binding, and unenforceable and/or should preliminarily enjoin Defendant UATP Management, LLC from initiating individual actions to compel arbitration against APFA members pending its determination of the enforceability of the claims at issue in this matter.

Respectfully submitted by:

**MARKS & KLEIN, LLP**

Dated: June 16, 2020                                   /s/ *Brent Davis*
Justin M. Klein
Brent M. Davis
*Attorneys for Plaintiff APFA, Inc.*

Andrew P. Bleiman
*Pro Hac Vice application to be filed*