**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| APFA, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>UATP MANAGEMENT, LLC,<br><br>          Defendant. | HONORABLE MICHAEL A. SHIPP<br>Civil Action No.  3:20-CV-05007<br><br>          (Document Electronically Filed) |

**UATP MANAGEMENT, LLC'S BRIEF IN SUPPORT OF ITS MOTION**
**TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE,**
**TO STAY THIS ACTION PENDING ARBITRATION**

**DLA PIPER LLP (US)**

David S. Sager
William J. Diggs
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
(973) 520-2550
david.sager@dlapiper.com
william.diggs@dlapiper.com

Norman Leon (*pro hac vice* forthcoming)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
(312) 368-4044
norman.leon@dlapiper.com

Karen C. Marchiano (*pro hac vice* forthcoming)
2000 University Avenue
East Palo Alto, California  94303
(650) 833-2170
karen.marchiano@us.dlapiper.com

*Attorneys for Defendant*
*UATP Management, LLC*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................4

      A.   The Parties and Their Franchise Agreements ...........................................4

      B.   The APFA and Its Complaint ....................................................................6

      C.   Multiple Franchisees Are Currently Litigating These Same Claims On An
           Individual Basis .......................................................................................7

III.  ARGUMENT .........................................................................................................9

      A.   The APFA's Complaint Should Be Dismissed Because The APFA Has
           Not Met Its Burden of Establishing Associational Standing .....................9

           1.   The APFA Cannot Meet The Third Prong Of The Standing Test
                Because The Claims Asserted and The Relief Requested Require
                the Participation of Individual Members .......................................10

           2.   The APFA Also Lacks Associational Standing Because It Has Not
                Identified A Member Who Would Otherwise Have Standing to Sue
                In Its Own Right.............................................................................17

      B.   The Complaint Should Be Dismissed Because Each Member's Franchise
           Agreement Contains Either (1) A Forum Selection Clause Mandating A
           Texas Venue, or (2) An Agreement Requiring The Submission Of These
           Claims To Binding Individual Arbitration in Texas. ...............................18

           1.   Because Members' Franchise Agreements Designate Texas As The
                Exclusive Forum For Disputes, This Matter Should Be Dismissed
                Under the Doctrine of *Forum Non Conveniens* .........................19

           2.   This Matter Should Be Dismissed Or Stayed Because Members'
                Franchise Agreements Contain Arbitration Clauses......................22

IV.   UATP SHOULD BE AWARDED ITS ATTORNEYS' FEES .........................25

V.    CONCLUSION....................................................................................................26

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995)............................................................................................23

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
   571 U.S. 49 (2013)..............................................................................................20

*Bano v. Union Carbide Corp.*,
   361 F.3d 696 (2d Cir. 2004).................................................................................9

*Blunt v. Lower Merion Sch. Dist.*,
   767 F.3d 247 (3d Cir. 2014)...............................................................................10

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)............................................................................................25

*Collins v. Mary Kay, Inc.*,
   874 F.3d 176 (3d Cir. 2017)...............................................................................20

*Days Inn of Am. Franchising, Inc. v. Windham*,
   699 F. Supp. 1581 (N.D. Ga. 1988) .....................................................................1

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)............................................................................................23

*Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*,
   284 F.3d 575 (5th Cir. 2002) .............................................................................14

*Future Care Consultants, LLC v. Connolly*,
   No. CV 17-2552, 2018 WL 1069414 (D.N.J. Feb. 26, 2018).................................14

*Gen. Am. Life Ins. Co. v. Int'l Ins. Co.*,
   No. 98-5588, 2000 WL 35547519 (D.N.J. Jan. 3, 2000).......................................17

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
   716 F.3d 764 (3d Cir. 2013)...............................................................................16

*Harnish v. Widener Univ. Sch. of Law*,
   833 F.3d 298 (3d Cir. 2016)...............................................................................12

*Harris v. McRae*,
   448 U.S. 297 (1980)............................................................................................14

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*,
  836 F.3d 261 (3d Cir. 2016)......................................................................4, 10

*Haskins v. First Am. Title Ins. Co.*,
  866 F. Supp. 2d 343 (D.N.J. 2012) ...................................................................19

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  __ U.S. __, 139 S. Ct. 524 (2019)....................................................................23

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)............................................................................... *passim*

*Iandolo v. Benetton Serv. Corp.*,
  No. 86 C 101575, 1987 U.S. Dist. LEXIS 6179 (N.D. Ill. July 6, 1987) ..................................1

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
  546 S.W.3d 648 (Tex. 2018), *reh'g denied* (June 15, 2018) ...............................................11

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)...........................................................................20

*Klay v. All Defendants*,
  389 F.3d 1191 (11th Cir. 2004) ...............................................................16, 18

*In re Managed Care Litig.*,
  No. 00-MD-1334, 2003 WL 22410373 (S.D. Fla. Sept. 15, 2003), *aff'd sub
  nom. Klay v. All Defendants*, 389 F.3d 1191 (11th Cir. 2004) ................................................16

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995)..................................................................................25

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)...................................................................................22

*New Jersey Physicians, Inc. v. President of U.S.*,
  653 F.3d 234 (3d Cir. 2011).......................................................................2, 17

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
  713 F. Supp. 2d 734 (N.D. Ill. 2010) ...................................................................16

*Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*,
  280 F.3d 278 (3d Cir. 2002)...........................................................................10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967)..................................................................................25

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  7 F.3d 1110 (3d Cir. 1993)............................................................................18

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
  133 F.3d 225 (3d Cir.), *cert. denied*, 525 U.S. 817 (1998)....................................25

*Retired Chicago Police Ass'n v. City of Chicago*,
  76 F.3d 856 (7th Cir. 1996) ..............................................................................9

*Richardson v. Coverall N. Am.*,
  Nos. 18-3393 & 18-3399, 2020 WL 2028523 (3d Cir. Apr. 28, 2020) ............................23, 24

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007)....................................................................................9, 21

*Six v. AM General Corp.*,
  Civil No. 04-6103 (RBK), 2005 WL 8174864 (D.N.J. Feb. 8, 2005) ....................................21

*St. Martin v. KFC Corp.*,
  935 F. Supp. 898 (W.D. Ky. 1996).......................................................................1

*Stanford Dev. Corp. v. Stanford Condominium Owners Ass'n*,
  285 S.W.3d 45 (Tex. 2009)..............................................................................19

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996)....................................................................................10

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982).....................................................................................9

**Statutes**

9 U.S.C. § 2............................................................................................23

9 U.S.C. § 3............................................................................................25

9 U.S.C. § 4............................................................................................17

Federal Arbitration Act § 3 ("FAA")............................................................... *passim*

N.J.S.A. §56:10-1 *et seq.* ............................................................................13

N.J.S.A. §56:10-4(a)....................................................................................13

N.J.S.A. §56:10-9.......................................................................................13

Texas Bus. & Comm. Code § 17.41, *et. seq.* ............................................................12

Texas Bus. & Comm. Code § 17.50 ....................................................................12, 13

Texas Deceptive Trade Practices Consumer Protection Act ("DTPCPA")....................................7, 12

**Other Authorities**

Administrative Office of the United States Courts,
https://www.uscourts.gov/statistics-reports/analysis-reports/federal-judicial-caseload-statistics (last visited on June 25, 2020) ...................................................................21

Commercial Arbitration and Mediation Procedures R-7,
AM. ARBITRATION ASSOC. (effective Oct. 1, 2013), available at
https://adr.org/sites/default/files/Commercial%20Rules.pdf....................................................24

Fed. R. Civ. P. 12(b)(1).....................................................................................................................4

Fed. R. Civ. P. 12(b)(6).....................................................................................................................4

## I.     __INTRODUCTION__

This action arises out of the APFA's thinly veiled attempt to transform a litany of individualized fraud and unfair practices claims into an associational suit for "declaratory judgment."  UATP brings this Motion because even if the APFA had standing to bring these claims on behalf of its members – and settled law makes clear it does not – the claims should never have been brought in this Court because *every member* of the APFA signed a franchise agreement that either (i) requires that all claims be brought exclusively in court in Texas, or (ii) requires that all claims be submitted to binding arbitration on an individual basis in Texas.

UATP is a franchisor of indoor adventure parks known as "Urban Air Adventure Parks." Formed just a few months before this suit was filed, the APFA is an association that purports to represent a minority (approximately 25 percent) of the Urban Air franchisees in the United States.  Its Complaint asserts, among other things, that UATP: (1) violated the Federal Trade Commission's pre-sale disclosure requirements by not disclosing (in disclosure documents that were issued in 2016 and 2017) the modifications it later decided to make to its system and the charges it would allegedly impose several years later;[1] (2) unreasonably rejected certain alternative suppliers, such as insurance brokers and merchandise vendors; (3) failed to act in good faith and in a commercially reasonable manner by imposing certain requirements, and charging certain fees, that negatively impacted the profitability of certain members; and (4)

---

[1]      It is well settled that there is no private right of action for an alleged violation of the FTC's Franchise Rule.  *Iandolo v. Benetton Serv. Corp.*, No. 86 C 10157, 1987 U.S. Dist. LEXIS 6179, at *3 (N.D. Ill. July 6, 1987); *accord St. Martin v. KFC Corp.*, 935 F. Supp. 898, 907 (W.D. Ky. 1996); *Days Inn of Am. Franchising, Inc. v. Windham*, 699 F. Supp. 1581, 1582-83 (N.D. Ga. 1988).

fraudulently induced some of the APFA's members – sophisticated individuals who made multi-million dollar investments in their franchises – to sign the agreements that expressly permit UATP to charge the very fees about which the APFA now complains.  All of these perceived grievances are loosely bundled together in the Complaint under a single claim for "Declaratory Judgment," which seeks declarations that are either not a proper subject of declaratory relief or, in many cases, bear no actual connection to the allegations of the Complaint.[2]

Regardless of the merits of its claims (or the lack thereof), the APFA's use of the "Declaratory Judgment" label is not nearly enough to justify its attempt to litigate these issues on behalf of its members.  The United States Supreme Court has made clear that an association only has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  Even if the APFA met the first and second elements – and it does not[3] – there is no scenario under which this Court could resolve the Complaint's various assertions of misconduct, or issue the 15 separate declarations it seeks, without the participation of individual members.

---

[2]     For example, the Complaint seeks a declaration that UATP may not "unilaterally amend the franchise agreements" to impose a 2.5% membership fee and a 5% advertising fee.  (Compl. ¶ 137(a)-(b)).  Yet the Complaint admits, in Paragraph 35, that "various" franchisees executed an amendment to their franchise agreements that specifically allow those fees.

[3]     Notably, the Complaint does not contain the requisite "specific allegations establishing that at least one **identified** member ha[s] suffered or would suffer harm.'" *New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 (3d Cir. 2011) (emphasis added).

The APFA asserts, for example, that all of the disputes that underlie its requests for declaratory relief "aris[e] out of and relat[e] to the franchise agreement between Urban Air and its franchisees." (*See* Compl. ¶¶ 133, 134, 137.)  But there is no single "franchise agreement" which governs UATP's relationship with its franchisees.  Not only has UATP modified its franchise agreement over the years (which is another one of the APFA's gripes; *see* Compl. ¶ 117.h), but some members signed amendments (the "Membership Amendments") under which they agreed to pay the fees the APFA now claims were "unilaterally" imposed.  (*Id*. at ¶ 35; *see also* Doc. 10-1 at PageID 439 (noting that "many members did not execute the Purported Amendment [the Membership Amendment]")).  Adding to the morass is the APFA's claim that some portion (or all) of those members were fraudulently induced to sign the Membership Amendments.  To resolve these allegations, each individual member would need to present individual evidence regarding whether they signed a Membership Amendment, why they did so, and what they were told (and when and by whom).  UATP would of course present its own evidence regarding the circumstances surrounding the execution of these documents, leaving the Court to determine, on a case-by-case basis, whether misrepresentations were made to each franchisee and, if so, whether each franchisee actually and justifiably relied upon those misrepresentations.  Similarly individualized analyses would be needed to support the extraordinarily fact-intensive request for declarations that UATP has not acted in good faith and a commercially reasonable manner in its dealings with some of its franchisees.[4]

---

[4]    As noted below, the fact that these claims need to be pursued individually is highlighted by the fact that at least two franchisees – represented by the same attorneys who filed this suit – have raised these same claims in individual lawsuits.

But even if the APFA could establish associational standing, its Complaint should still be dismissed or, in the alternative, stayed. Each one of UATP's 198 franchisees (which operate or will operate in at least 34 states) signed a franchise agreement that contains either (1) a forum selection clause which requires that franchisees bring their claims in court in Texas, or (2) an arbitration agreement which requires franchisees to submit their claims to binding arbitration on an individual basis before the American Arbitration Association ("AAA") in Texas. And, because the APFA purports to be suing in a representative capacity on behalf of its members to enforce their franchise agreements, it is bound by the forum selection clauses and arbitration agreements set forth in those agreements. So whether this lawsuit is dismissed on the basis of *forum non conveniens* or stayed pending arbitration, the result is the same: it cannot, and should not, proceed in this Court. For these and the additional reasons set forth below, the APFA's Complaint should be dismissed.

## II.    FACTUAL BACKGROUND[5]

### A.    The Parties and Their Franchise Agreements

UATP is a franchisor of indoor adventure parks that operate under the name Urban Air. (Declaration of Stephen Polozola In Support of Motion to Dismiss Complaint ["Polozola Decl."], at ¶ 2.) It has been engaged in the business of granting franchises for Urban Air businesses since 2015. (*Id*. ¶ 2.) As of March of 2019 (before the outbreak of the COVID pandemic), there were

---

[5]     Because this is a factual 12(b)(1) challenge that attacks the allegations underlying the Complaint's assertion of jurisdiction, UATP may present competing facts and "no presumptive truthfulness attaches to [the] plaintiff's allegations..." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (internal citation omitted). In this way, a Rule 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference afforded under a 12(b)(6) review. *Id.*

131 Urban Air franchises spread across 34 states.  (*Id*. ¶ 3.)  An additional 67 franchisees have signed franchise agreements and are in the process of commencing operations (*Id*.)

The franchise relationship between UATP and each of its franchisees is governed by a written franchise agreement.  (*Id*. ¶ 4).  Since it sold its first franchise in 2015, all of UATP's franchise agreements have contained a forum selection clause that required the franchisees to bring any claims they had against UATP in court in Texas.  (*Id*. ¶ 5).  For example, the 2016 and 2017 forms of franchise agreement that UATP attached to the complaint provide that:

> any dispute arising under or in connection with this agreement and any claim affecting its validity, construction, effect, performance or termination shall be resolved exclusively by the state district courts located in Tarrant County, Texas.

(*Id*. ¶ 5.b).  In 2019, UATP's franchise agreement was modified in several respects.  One such modification included the addition of an arbitration agreement, which requires that claims be arbitrated in Texas, on individual basis, before the AAA pursuant to its Commercial Arbitration Rules.    (*Id*. ¶ 6).  Thirty-six franchisees signed the 2019 form of agreement containing the arbitration agreement.  (*Id*.)

Around the same time, UATP rolled out a new membership program for its franchisees. (Compl. ¶ 24.)  And, as part of that process, it presented its franchisees with an amendment (the "Membership Amendment") that modified certain provisions of existing franchise agreements. The franchisees for approximately 63 Urban Air locations (that were not already on the 2019 form of franchise agreement) have signed the Membership Amendment.  (Polozola Decl. ¶ 7, Ex. C.)  Among other provisions, that amendment modified the dispute resolution provisions in the parties' franchise agreements to align them with the terms of the 2019 franchise agreement – *i.e.*, to require binding arbitration on an individual basis, in Texas, before the AAA under its Commercial Rules:

> [A]ny dispute between (a) you and any other owner and (b) Franchisor and its affiliates, and their respective subsidiaries, directors, officers, employees, agents, shareholders, designees, and representatives (collectively, the 'Franchisor Indemnitees') arising under, out of, in connection with, or in relation to (1) any claim, (ii) the negotiation of this agreement (including any other agreement between you and Franchisor), (iii) the offer and sale of the franchise opportunity, (iv) representations made prior to the execution of this agreement, and (v) this agreement or any other agreement between you and franchisor, any attachments thereto, or the enforceability of this agreement must be submitted to binding arbitration before a single arbiter with the American Arbitration Association pursuant to its Commercial Industry Rules in effect at the time the arbitration demand is filed.  Any arbitration demand will be subject to the Federal Arbitration Act.  Franchisee, the owners, and the Franchisor Indemnities agree that each may bring claims against the other only in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.

(*Id.* ¶ 7; *see also* Doc. 1 at PageID 399.)  The Complaint acknowledges that an unspecified number of the APFA's members have signed the Membership Amendment.  (Compl. ¶ 35.)

## B.    The APFA and Its Complaint

The APFA is a Delaware corporation that is based in Illinois.  (Compl. ¶ 6; *see also* https://www.apfa.biz/about, last visited on June 25, 2020.)  It was formed in late 2019, allegedly to represent the interests of UATP franchisees who collectively own about 50 franchised businesses (Compl. ¶¶ 6-7) – barely 25% of the approximately 198 Urban Air franchises in the United States (Polozola Decl. ¶ 3).

The APFA filed this action on April 23, 2020.  Spanning 46 pages and 140 paragraphs (not including subparagraphs), its Complaint sets forth a host of alleged wrongdoings and grievances which touch upon virtually every business decision UATP has made.  While in form the Complaint asserts only a single claim for declaratory relief, in substance that "single" claim (which seeks at least 15 separate declarations) is simply a repackaging and relabeling of many substantive claims that effectively ask this Court to conclude that UATP has (i) breached the implied covenant of good faith and fair dealing (Compl. ¶ 137.j), (ii) violated the Texas

Deceptive Trade Practices Consumer Protection Act ("DTPCPA") (*id*. at ¶ 137.n), (iii) violated the New Jersey Franchise Practices Act (*id*. at ¶ 137.o), (iv) engaged in common law fraud (*see*, *e.g*., *id*. at ¶ 137.e, ¶137.i., 72 and 74), and (v) breached the franchise agreements (*see*, *e.g*., *id*. at ¶¶137.a, b, c, d, g, and h).

### C.   Multiple Franchisees Are Currently Litigating These Same Claims On An Individual Basis

That the disputes that underlie this proceeding are not appropriately addressed through an association is perhaps best evidenced by the fact that individual franchisees (whom UATP believes to be members of the APFA) are presently litigating the same issues raised here (through claims filed by the same attorneys) in individual lawsuits in Texas.  (*See* Complaint in *Conway Urban Air LLC vs. UATP Management LLC*, Tarrant County Case No. 017-316957-20, and Counterclaim in *UATP Management LLC v. Urban Air of Benton*, Tarrant County Case No. 141-3144720-20; Polozola Decl. ¶¶ 14, 15, Exs. D, E.)  Less than a month after this suit was filed, the APFA's counsel filed a lawsuit in Texas state court on behalf of a single UATP franchisee located in Arkansas (Conway Urban Air LLC) (the "Conway Compl.").  A few months prior to this lawsuit, in February of 2020, the APFA's counsel filed counterclaims on behalf of another Arkansas franchisee (Urban Air of Benton, LLC) ("the Benton Counterclaim"). Both the Conway Complaint and the Benton Counterclaim raise the same claims asserted here. For example, just as in this case, the franchisees in both of those suits complain about:

- UATP's "imposition" of membership and NAF fees and its alleged failure to disclose those fees in its disclosure documents (*see* Conway Compl. ¶¶ 43-49, 97-100; Benton Counterclaim ¶¶ 39-41, 59-66, 68);

- UATP's "imposition" of mandatory vendor relationships and the charging of supra-competitive prices for things like insurance and socks (*see* Conway Compl. ¶¶ 94-96;

Benton Counterclaim ¶¶ 80-83);

- UATP's allegedly improper receipt of rebates and local marketing fees (*see* Conway Compl. ¶¶ 106-100; Benton Counterclaim ¶ 86); and

- UATP's allegedly unreasonable rejection of alternative vendors (*see* Conway Compl. ¶ 144; Benton Counterclaim ¶ 82).

Indeed, with the exception of this Complaint's reference to the New Jersey Franchise Practices Act, both pleadings raise the very same issues raised in this suit.  (*See* Conway Compl. ¶ 196; Benton Counterclaim ¶ 86.)[6]  The only material "difference" is that, in those suits, the franchisees have claimed that these allegations support claims not just for declaratory relief, but for fraud and breach of contract.[7]

---

[6]    Many of the allegations in the Conway and Benton pleadings repeat verbatim the allegations in this Complaint.  (*Compare*, *e.g.*, Compl. ¶¶ 77- 84  and ¶¶ 97- 123 with Conway Compl. ¶¶ 128- 135 and ¶¶ 136-162).

[7]    The overlap between the proceedings is underscored by the fact that, in the Conway matter, UATP has filed a motion to stay the proceedings pending arbitration.  In this case, the APFA just filed a motion to enjoin UATP from seeking to enforce the arbitration agreements it entered into with its franchisees.  (Doc. 10).

III.   **ARGUMENT**

A.   **The APFA's Complaint Should Be Dismissed Because The APFA Has Not Met Its Burden of Establishing Associational Standing**[8]

As a general rule, to establish standing, an injured party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 474 (1982) (quoting *Warth v. Seldin,* 422 U.S. 490, 499 (1975)).  "Associational standing carves only a narrow exception from the ordinary rule." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004); *see also Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996) (the doctrine of associational standing is an "exception" to the general prohibition of representational standing).  To establish that an association has standing to bring suit on behalf of its members, the association must establish that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343.  At least two of

---

[8]   When a court can readily determine that it lacks subject matter jurisdiction, the proper course is to dismiss on that ground prior to dismissing on *forum non conveniens* grounds. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007).  However, a court has leeway "to choose among threshold grounds for denying audience to a case on the merits" and can dispose of an action by *a forum non conveniens* dismissal without first determining questions of subject-matter when considerations of convenience, fairness, and judicial economy so warrant. *Id.* at 431.  Therefore, this Court may dismiss the Complaint either because it lacks subject matter jurisdiction or on the basis of *forum non conveniens*.

these requirements have not been met here.[9]

> **1.     The APFA Cannot Meet The Third Prong Of The Standing Test Because The Claims Asserted and The Relief Requested Require the Participation of Individual Members**

The third prong of the *Hunt* test – whether the participation of individual members will be required – focuses on "matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996). For this reason, the Third Circuit has made clear that associational standing is "improper for claims requiring a fact-intensive-individual inquiry." *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d Cir. 2002). Here, the APFA's claims will require such individualized, fact-intensive inquiries.

> **(a)     *The AFPA's Attempts To Invalidate The Membership Amendments Will Require The Participation of Individual Members***

Among the fifteen declarations sought in the Complaint are several which seek to set aside the Membership Amendments that an unspecified number of the APFA's members executed. (Compl. ¶ 137(a)-(e)). Therefore, at minimum, an individualized inquiry will be needed to determine which franchisees signed a Membership Amendment.[10] From that point,

---

[9]     "The plaintiff [has] the burden of proof that jurisdiction does in fact exist." *Hartig*, 836 F.3d at 268; *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) ("It is well established that plaintiffs bear the burden of demonstrating that they have standing in the action that they have brought.")

[10]     UATP's counsel has asked the APFA's counsel to provide a list of those members that executed the Membership Amendment. (*See* Doc. 10-2 at PageID 476.) The APFA's counsel never responded to this request.

the resolution of the APFA's claim will become entirely fact-dependent, as the Court will need to determine, on an individual basis, whether each franchisee was in fact fraudulently induced to enter into its respective amendment.  This will require, among other things, the presentation of evidence from each individual member about the representations it received (including what was said, when it was said, and by whom) and an analysis (that will need to take into account any additional communications between UATP and each franchisee) as to whether, based on the totality of the circumstances, that particular franchisee actually and justifiably relied upon whatever representations they allegedly received.  *See, e.g., JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018), *reh'g denied* (June 15, 2018) ("to prevail on a fraud claim, a plaintiff must show: (1) the defendant "made a material representation that was false"; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;" (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.  [citations omitted]  The fourth element has two requirements: the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable.").[11]  These questions cannot be answered on some associational basis.  "Reliance is nearly always an individualized question, requiring case-by-case determinations of what effect, if any, the misrepresentation had on plaintiffs' decision-

---

[11]     The APFA has asserted that "Texas law applies."  (Doc. 10-1 at PageID 452.)  Each franchise agreement includes a provision which provides that "This Agreement shall be and all claims arising out of or related to the relationship created hereby shall be governed by and interpreted and construed under the substantive laws of the State of Texas, without regard to its conflicts of laws principles ..."  (Polozola Decl.¶ 12).

making." *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 309–10 (3d Cir. 2016).  For this

reason alone, the APFA's Complaint fails the third prong of the *Hunt* test.

> **(b)**      *The AFPA's Attempt To Invalidate The ACH Authorizations Will Require The Participation of Individual Members*

The APFA's request that this Court issue a declaration that ACH Authorizations "which

have been previously signed are unenforceable" will likewise necessitate the participation of

individual members (Compl. ¶ 137(g)).  According to the Complaint, the ACH Authorizations

that some of the APFA's members signed were fraudulently induced.  *See* Compl. ¶ 47 ("Under

fraudulent and false pretenses, Urban Air has sought the execution of an updated 'ACH

Authorization' from Urban Air franchisees for this purpose.").  As with the claim regarding the

Membership Amendments, addressing this request will entail fact-intensive, individualized

inquiries that (i) will begin with identifying which members signed the ACH Authorization, and

(ii) will end (after individualized discovery) with individualized determinations into what was

said, when it was said, who said it, and whether each franchisee actually and justifiably relied

upon any such representations in executing the ACH Authorization.

> **(c)**      *The APFA's Request For Declaratory Relief Under The DTPCPA Will Require The Participation of Individual Members*

The APFA also requests a declaration that "Urban Air's implementation of undisclosed

fees constitutes a violation of the registration and disclosure regulations of the FTC thereby

constituting a violation of the Texas Deceptive Trade Practices and Consumer Protection Act

("DTPCPA"), Texas Bus. & Comm. Code § 17.41, et. seq., which prohibits unfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce,

**entitling APFA to injunctive and declaratory relief pursuant to the DTPCPA**."  (Complaint

¶ 137.n; emphasis added).  Under Section 17.50 of the DTPCPA , a consumer may only maintain

an action where the conduct prohibited by that statute "constitute[s] a producing cause of

12

economic damages or damages for mental anguish."  Texas Bus. & Comm. Code § 17.50. Therefore, to obtain the relief it seeks, the APFA would need to show – through the participation of its individual members – that UATP's alleged conduct caused each individual franchisee to incur economic damages or damages for mental anguish.

**(d)**     ***The AFPA's Request For Declaratory Relief Under the NJFPA Will Require The Participation Of Individual Members***

The APFA also seeks a declaration, "as to New Jersey franchisee members of the APFA, [that] Urban Air's conduct as detailed herein constitutes violations of the violate [sic] the New Jersey Franchise Practices Act, N.J.S.A. §56:10-1 et seq."  (Compl. ¶ 137.o).  As the APFA correctly concedes, the NJFPA only protects New Jersey franchisees.  N.J.S.A. §56:10-4(a). Therefore, to prevail, UATP's franchisees in New Jersey would need to individually present evidence on whether UATP's alleged conduct violates their rights under the NJFPA. Individualized inquiries into each franchisee's circumstances would also be required because the NJFPA makes clear that "[i]t shall be a defense for a franchisor, to any action brought under this act by a franchisee, if it be shown that said franchisee has failed to substantially comply with requirements imposed by the franchise and other agreements ancillary or collateral thereto." N.J.S.A. §56:10-9.

**(e)**     ***The APFA's Request For A Declaration That UATP Breached The Implied Covenant Will Require The Participation of Individual Members***

In Paragraph 137.j of its Complaint, the APFA seeks a declaration that UATP breached the implied covenant of good faith and fair dealing, asking this Court to declare that "Urban Air through its various actions, as fully detailed herein, abused its authority under the franchise agreements, failed to exercise such authority in good faith and in a commercially reasonable manner, and has dealt with Urban Air franchisees in bad faith, in an unfair manner and in

13

contravention of the intention and spirit of the franchise agreements." But to issue such a declaration (and none is warranted), the Court would first need to determine which "franchise agreement" applied because, as noted above, UATP's relationship with its franchisees is governed by various forms of franchise agreements and different combinations of amendments that some, but not all, franchisees executed. Once that inquiry was completed, individual members would need to present evidence regarding how each had been treated, how UATP's alleged actions impacted their franchise, and whether that impact (if any) constituted a breach of the implied covenant of good faith. *See, e.g., Harris v. McRae*, 448 U.S. 297, 320–21 (1980) (denying association standing on free exercise claim; since "it is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion, the claim asserted here is one that ordinarily requires individual participation"); *Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002) (denying associational standing in a case where an association alleged that a policy improperly interfered with multiple, specific contracts between individual representatives and their manufacturers; "we see no way to resolve such fact-specific tort claims without participation of the individual members of the association"); *Future Care Consultants, LLC v. Connolly*, No. CV 17-2552 (RMB/AMD), 2018 WL 1069414, at *6 (D.N.J. Feb. 26, 2018) (denying standing where "fact-intensive-individual inquiry into the decision-making process as to a single member's Medicaid eligibility would be essential to an adjudication of the claims asserted"). A sampling of the allegations grouped together under the subheading "Urban Air's Wrongful and Bad Faith Conduct" illustrates the point:

- In support of the APFA's claim for a declaration that UATP acted unreasonably and abused its authority (Compl. ¶ 137.j), Paragraph 89 of the Complaint states that "the

construction and installation price for attractions was substantially inflated and should have been considerably less."  To prove this claim, individual members would need to present individual, fact-intensive evidence on whether this allegation applied to each of them, what the construction and installation prices were for individual attractions at each franchisee's particular franchise, and what, in that franchisee's view, those costs should have been.

- Paragraph 80 of the Complaint states that "The membership program is materially diminishing and impairing franchisee profitability to the substantial detriment of franchisees and the significant benefit of Urban Air who is collecting millions of dollars in membership fees."  To prove this claim, individual members would need to present fact-intensive evidence on each franchisee's profitability and the effect of the membership program on their profitability.

- In support of the APFA's claim for a declaration that UATP unreasonably rejected alternative vendors (Compl. ¶¶ 137.j and 137.m), the Complaint makes various allegations (in Paragraphs 97 through 105 of the Complaint) about UATP's designation of a mandatory vendor for insurance, errors made by this vendor, franchisees' alleged requests to use alternative vendors, and UATP's alleged unreasonable rejection of those alternative vendors.  Proving this claim would necessarily require individual members to present fact-intensive evidence about alleged errors, the requests they submitted, and the reasons why their requests to use other vendors were rejected.

### (f)   *Individual Members Will Need To Participate To Defend Against Arbitration Motions*

Finally, the APFA asserts that some of its members have signed the Membership Amendment containing the arbitration clause, while others have not.  *See* Compl. ¶ 35 (alleging

that UATP fraudulently induced "various franchisees" to execute the Membership Amendment) and Doc. 10-1 at PageID 439 ("many members did not execute the Purported Amendment [the Membership Amendment]").  Where, as here, some association members have signed arbitration agreements and others have not, the association lacks standing because individual members must participate to defend against a motion to compel arbitration.  *See, e.g., Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 744 (N.D. Ill. 2010) (association of chiropractic physicians lacked standing under the third element of the *Hunt* test because "the participation of individual members is required to determine whether [sic] which if any of their claims are subject [to] arbitration"); *In re Managed Care Litig.*, No. 00-MD-1334, 2003 WL 22410373, at *10 (S.D. Fla. Sept. 15, 2003), *aff'd sub nom. Klay v. All Defendants*, 389 F.3d 1191 (11th Cir. 2004) ("In the instant case, participation of individual members is unavoidable. The only way for the Court to determine which members have claims not subject to arbitration and what prospective relief might be appropriate for those members is for each member to participate and defend against a motion to compel arbitration.").

Further, to the extent any members challenge their arbitration agreements, those challenges (to the extent they are properly addressed by a court instead of an arbiter) will require the individual participation of those members.  The Third Circuit has held that where a party opposing arbitration "has come forth with reliable evidence that is more than a 'naked assertion . . . that [he] did not intend to be bound by the arbitration agreement," a motion to stay should be resolved under the standards applicable to motions for summary judgment.  *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013).  Under those standards, "the parties should be entitled to discovery on the question of arbitrability *before* a court entertains further briefing on [the] question."  *Id*. at 776 (emphasis added).  If, once that discovery is

16

completed, "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting 9 U.S.C. § 4); *accord Gen. Am. Life Ins. Co. v. Int'l Ins. Co.*, No. 98-5588, 2000 WL 35547519, at *11 (D.N.J. Jan. 3, 2000) ("[T]he Federal Arbitration Act provides that '[i]f the making of the arbitration agreement or the failure, neglect or refusal to perform the same be in issue, the court should proceed summarily to the trial thereof.'") (quoting 9 U.S.C. § 4). Because some APFA members have arbitration clauses and others do not, and because any challenges to those agreements will require the members' individual participation, the APFA lacks associational standing and the Complaint must be dismissed.

> **2.   The APFA Also Lacks Associational Standing Because It Has Not Identified A Member Who Would Otherwise Have Standing to Sue In Its Own Right**

Under the first prong of the *Hunt* test, an association only has standing to bring suit on behalf of its members when "its members would otherwise have standing to sue in their own right." *Hunt*, 432 U.S. at 343. To satisfy this prong, "an organization must make specific allegations establishing that at least one identified member ha[s] suffered or would suffer harm." *New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 (3d Cir. 2011). The APFA has not met its burden on this prong because it has not made any specific allegations establishing that at least one identified member would otherwise have standing to sue in its own right. For this reason as well, the APFA lacks standing.

17

**B.** **The Complaint Should Be Dismissed Because Each Member's Franchise Agreement Contains Either (1) A Forum Selection Clause Mandating A Texas Venue, or (2) An Agreement Requiring The Submission Of These Claims To Binding Individual Arbitration in Texas.**

Even if the APFA had standing to press its claims, which it does not, the APFA never should have brought these claims in this Court because each one of its members agreed to either litigate its claims exclusively in Texas or before an arbitrator.  (*See* Polozola Decl. ¶¶ 5-8).  The APFA alleges that it brought this action as a representative of its members to enforce its members' supposed contractual rights.  *See, e.g.,* Compl. ¶ 133 (the APFA is raising these disputes "on behalf of its members"); Compl. ¶ 133 (identifying all of the APFA's requests for declaratory relief as "arising out of and relating [sic] the franchise agreement between Urban Air and its franchisees").  Under federal law, associations suing in a representative capacity are bound by the same limitations and obligations as their members.  *Klay v. All Defendants*, 389 F.3d 1191, 1202 (11th Cir. 2004) (arbitration clause analysis that applied to members also applied to association suing in representative capacity for members) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65–66 (1997)); *see also Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) (where a principal is bound under an arbitration clause, its representatives are also covered).  Likewise, under Texas law (which governs under the contracts), a representative who sues on behalf of a contracting party stands in the contracting party's shoes and is bound by all of that party's obligations – including the arbitration, choice of law, and choice of forum provisions set forth in the contract.

*Stanford Dev. Corp. v. Stanford Condo. Owners Ass'n*, 285 S.W.3d 45, 49 (Tex. 2009).[12]

For these reasons, the APFA is bound by both the forum selection clauses and the arbitration agreements set forth in its members' franchise agreements. The former bar the APFA from pressing its claims in this Court; the latter bar it from pressing its claims in any court.

## 1. Because Members' Franchise Agreements Designate Texas As The Exclusive Forum For Disputes, This Matter Should Be Dismissed Under the Doctrine of *Forum Non Conveniens*

The franchise agreements without arbitration clauses make clear that Texas is the exclusive forum for the resolution of these claims. For example, the 2016 and 2017 forms of agreement that the APFA attached to its Complaint provide that "any dispute arising under or in connection with this agreement and any claim affecting its validity, construction, effect performance or termination shall be resolved exclusively by the state district courts located in Tarrant County, Texas, to the jurisdiction of which the parties hereby irrevocably submit." (Polozola Decl. ¶ 5.b.) There can be no question that the claims asserted here fall within the ambit of this broad clause because, as noted above, the APFA specifically alleges that its requests for declaratory relief "aris[e] out of and relat[e] [sic] the franchise agreement between Urban Air and its franchisees." (Compl. ¶ 133).

---

[12]   In addition, because the APFA has filed suit based on the terms set forth in the franchise agreements, Texas law holds that it is estopped from denying the applicability of other provisions in the agreements, such as the arbitration agreement. *Stanford Dev. Corp.,* 285 S.W.3d at 49 . The same is true under New Jersey law. *See Haskins v. First Am. Title Ins. Co.,* 866 F. Supp. 2d 343, 348, 350 (D.N.J. 2012) ("Under the 'knowingly exploit' theory of equitable estoppel, a non-signatory may be bound by an arbitration clause… by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract. ... In this way, equitable estoppel prevents a non-signatory from 'cherry-picking' beneficial contract terms while ignoring other provisions that don't benefit it or that it would prefer not to be governed by such as an arbitration clause.").

In federal cases (like this one) that are premised on diversity jurisdiction (*see* Compl. ¶¶ 10-11), the effect of a contractual forum selection clause is governed by federal law, not state law. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 877 (3d Cir. 1995). And, under federal law, a forum-selection clause that points to a state forum is properly enforced through the doctrine of *forum non conveniens*. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013).

Forum-selection clauses which point to a state forum are evaluated in the same manner as clauses that point to a different federal forum. *Id.* at 61. As the Supreme Court made clear in *Atlantic Marine*, where there is a valid forum selection clause, the party defying that clause bears the "heavy burden" of showing why it should *not* be enforced. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186–87 (3d Cir. 2017). In fact, where such a clause exists, the "private factors" typically considered on a transfer motion – such as the convenience of the parties and the plaintiff's choice of forum – are necessarily deemed to "weigh entirely in favor of the preselected forum," not the alternative forum chosen by the plaintiff. *Id.* at 186. "As a consequence, a district court may consider arguments about public-interest factors only." *Alt. Marine Constr. Co.*, 571 U.S. at 64. Because such factors will rarely overcome the parties' agreement as to the proper forum, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* at 51 (quoting *Stewart Org., Inc. v. Ricoh*

*Corp.*, 487 U.S. 22, 33 (1988)).[13]

This is hardly such a case.  "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'"  *Id*. at 62 n.6.   None of these factors establish the exceptional circumstances needed to overcome the forum selection clause.   To the contrary, all the franchisees entered into franchise agreement with a franchisor whose principal place of business is located in Texas (Polozola Decl. ¶ 10), all of the decisions challenged in this case were made in Texas (*id*.), and Texas law governs the parties' rights and obligations under the franchise agreements (*id*. ¶ 12).   Moreover, according to the statistics compiled by the Administrative Office of the United States Courts, with one exception, this Court has more civil cases on its docket than any other district court in the country.   *See* https://www.uscourts.gov/statistics-reports/analysis-reports/federal-judicial-caseload-statistics (last visited on June 25, 2020).   The forum selection clause should be enforced, and this suit should be dismissed pursuant to the doctrine of *forum non conveniens*.

---

[13]    Even if the private factors were considered, they would weigh strongly in favor of dismissal or transfer.  UATP and all of its employees are located in Texas (Polozola Decl. ¶ 10), the insurance agent is in Texas (*id*. ¶ 11), and, most importantly, the APFA does not call New Jersey home.  (Compl. ¶ 6).  The typical presumption in favor of the plaintiff's chosen forum "applies with less force" where the forum is not the plaintiff's home.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).  The only apparent connection between New Jersey and this suit is that New Jersey is the home of the APFA's counsel, but "the location of one's attorney is irrelevant to a transfer analysis."  *Six v. AM General Corp.*, Civil No. 04-6103 (RBK), 2005 WL 8174864, at *3 (D.N.J. Feb. 8, 2005).

2. **This Matter Should Be Dismissed Or Stayed Because Members' Franchise Agreements Contain Arbitration Clauses**

(a) *The Membership Amendments Delegated All Arbitrability Questions To An Arbitrator*

As noted above, the APFA asserts that "various" members have signed the Membership Amendment. (Compl. ¶ 35; *see also* Doc. 10-1 at PageID 439 (noting that "many members did not execute" the Membership Amendment))).[14]  The Membership Amendment contains a broad arbitration clause which requires that:

> any dispute between (a) you and any other owner and (b) [UATP] and its affiliates, and their respective subsidiaries, directors, officers, employees, agents, shareholders, designees, and representatives (collectively, the 'Franchisor Indemnitees') arising under, out of, in connection with, or in relation to (i) any claim, (ii) the negotiation of this agreement (including any other agreement between you and Franchisor), (iii) the offer and sale of the franchise opportunity, (iv) representations made prior to the execution of this agreement, and (v) this agreement or any other agreement between you and franchisor, any attachments thereto, **or the enforceability of this agreement**, must be submitted to binding arbitration before a single arbiter with the American Arbitration Association **pursuant to its Commercial Industry Rules in effect at the time the arbitration demand is filed**.  Any arbitration demand will be subject to the Federal Arbitration Act.  Franchisee, the owners, and the Franchisor Indemnities agree that each may bring claims against the other only in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding…the arbitration shall occur in Dallas County, Texas."

(*See* Doc. 1 at PageID 399.)  Consistent with the strong, well-established, and widely recognized federal policy in favor of arbitration, this agreement should be enforced, and this matter stayed or dismissed, as required by Section 3 of the Federal Arbitration Act ("FAA").  *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983) (the FAA "is a congressional

---

[14]  The APFA does not state whether any of its members signed the 2019 form of Franchise Agreement (which also contains an arbitration clause).  (Polozola Decl. ¶ 6).

declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary").[15]

Typically, when faced with a motion to enforce an arbitration agreement, courts consider two factors: "1) whether there is a valid agreement to arbitrate; and 2) whether that agreement encompasses the dispute at issue." *Richardson v. Coverall N. Am.*, Nos. 18-3393 & 18-3399, 2020 WL 2028523, at *2 (3d Cir. Apr. 28, 2020) (citing *Jaludi v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 2019)).   However, "parties are free to assign the resolution of these issues to an arbitrator." *Id.*  "Parties may agree to have an arbitrator decide not only the merits of a particular dispute but also "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, __ U.S. __, 139 S. Ct. 524, 529 (2019).  The only limitation on this principle is that there must be "clear and unmistakable" evidence of the parties' agreement to delegate arbitrability questions to the arbitrator. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).  When such evidence exists, the courts must respect the parties' decision as embodied in the contract. *Henry Schein*, 139 S. Ct. at 530.  "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529.

---

[15]    The Membership Amendment specifically states that "Any arbitration demand will be subject to the Federal Arbitration Act."  Regardless, the FAA would apply even if the parties had not expressly provided for its application.  The FAA applies whenever there is an agreement to arbitrate contained in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995).  The franchise agreements at issue in this case were entered into between UATP, a Texas limited liability company with its principal place of business in Texas, and more than 50 franchisees located throughout the United States.  (Compl. ¶¶ 7, 10; Polozola Decl. ¶ 10).

Here, the arbitration agreements in the Membership Amendments clearly and unmistakably delegated arbitrability issues to an arbitrator in two separate ways: (1) by expressly requiring the parties to arbitrate disputes over the "enforceability of this agreement"; and (2) by providing that arbitration would be conducted pursuant to the AAA's Commercial Rules (which delegate arbitrability issues to the arbitrator).[16]  *See Richardson*, 2020 WL 2028523, at *2 (the incorporation of the AAA Rules constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability issues).  Therefore, those APFA members who signed the Membership Amendments must be compelled to arbitrate their claims, including any challenges they have to the enforceability of their arbitration agreements.  And, as noted above, the APFA is bound by this limitation.

**(b)** ***The Arbitration Agreements Clearly Encompass These Disputes***

Even if the parties had not delegated arbitrability questions to an arbitrator, there would be no question that the APFA's claim for declaratory judgment falls squarely within the broad scope of the arbitration clause, which encompasses all disputes "arising under, out of, in connection with, or in relation to" "this agreement or any other agreement between you and franchisor."  When a court interprets provisions in an agreement "covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of

---

[16]    The AAA's Commercial Rules provide that "(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim. (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract."  Commercial Arbitration and Mediation Procedures R-7, AM. ARBITRATION ASSOC. (effective Oct. 1, 2013), *available at* https://adr.org/sites/default/files/Commercial%20Rules.pdf.

the arbitration clause itself resolved in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989)). In fact, "[a]ny inquiry into the scope of an arbitration clause must necessarily begin with the presumption that arbitration applies." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 231 (3d Cir.), *cert. denied*, 525 U.S. 817 (1998). Here, there is no ambiguity. The APFA's Complaint specifically states that its claims for declaratory relief claim "aris[e] out of and relat[e] [to] the franchise agreement" – which are exactly the issues the arbitration agreements explicitly encompass. (*See* Compl. ¶¶ 133, 134, 136, 137).

The fact that the APFA has asserted that the Membership Amendments as a whole were fraudulently induced and lack consideration (*see* Compl. ¶¶ 137.e., 137.f) makes no difference. The FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, (1967). "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46, (2006).

In sum, because the APFA's declaratory relief claim is "referable to arbitration" under the arbitration clause, this action must be stayed pursuant to 9 U.S.C. § 3 until arbitration has been had on an individual basis in Texas in accordance with the arbitration clause's terms. *See* 9 U.S.C. § 3 ("the court . . . **shall** on application of one of the parties stay the trial of the action until such arbitration has been had") (emphasis added).

## IV.    UATP SHOULD BE AWARDED ITS ATTORNEYS' FEES

In addition to the entry of an Order dismissing the Complaint, UATP seeks the attorneys'

fees and costs it incurred in connection with the instant Motion. In the franchise agreements, the APFA's members agreed to pay UATP "all costs and expenses incurred by [UATP] in enforcing the terms of [the Franchise] Agreement including, without limitation . . . reasonable attorneys' fees."   (Polozola Decl. ¶ 13.)   The parties further agreed that the Membership Amendment (which contains the arbitration agreement) "is an integral part of, and is incorporated into, the Franchise Agreement."  (Doc 1 at PageID 400).  Therefore, if this Court dismisses this suit based on the forum selection clause in the franchise agreement or stays it based on the arbitration agreements in the Membership Amendments, UATP respectfully requests the Court order the APFA to pay the reasonable attorneys' fees and costs UATP incurred in bringing this Motion to enforce the terms of those agreements.

## V.      **CONCLUSION**

For the foregoing reason, UATP's motion should be granted, the Complaint should be dismissed, and UATP should be awarded the attorney's fees and costs it incurred in connection with this motion.

Dated:  June 29, 2020                              Respectfully submitted,

                                                        */s/* David Sager
                                                        David Sager
                                                        William Diggs
                                                        DLA Piper LLP (US)
                                                        51 John F. Kennedy Parkway, Suite 120
                                                        Short Hills, New Jersey 07078-2704
                                                        (973) 520-2550
                                                        david.sager@dlapiper.com
                                                        william.diggs@dlapiper.com

                                                        Norman Leon (*pro hac vice* forthcoming)
                                                        DLA Piper LLP (US)
                                                        444 West Lake Street, Suite 900
                                                        Chicago, IL 60606-0089
                                                        (312) 368-4044
                                                        norman.leon@dlapiper.com

26

Karen C. Marchiano (*pro hac vice* forthcoming)
DLA Piper LLP (US)
2000 University Avenue
East Palo Alto, CA  94303
(650) 833-2170
karen.marchiano@us.dlapiper.com

*Attorneys for Defendant UATP Management LLC*

27