**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| APFA, INC., | HONORABLE MICHAEL A. SHIPP |
| Plaintiff, | Civil Action No.  3:20-CV-05007 |
| v. | |
| UATP MANAGEMENT, LLC, | (Document Electronically Filed) |
| Defendant. | |

**DEFENDANT UATP MANAGEMENT, LLC'S BRIEF IN OPPOSITION TO**
**<u>PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF</u>**

# TABLE OF CONTENTS

I.   Introduction ...................................................................................................................1

II.  Factual Background ......................................................................................................4

     A.   UATP and its Relationship with Franchisees .......................................................4

     B.   The APFA and its Efforts to Circumvent the Individual Franchisees'
          Contractual Obligations ...................................................................................6

III. Argument ......................................................................................................................7

     A.   This Motion Should Be Stayed Pending This Court's Ruling On UATP's
          Motion To Dismiss For Lack of Subject Matter Jurisdiction or Under the
          Doctrine of Forum Non Conveniens ....................................................................7

     B.   The APFA's Motion Must Be Denied Because All Of The Requested Relief
          Hinges On A Determination That Must Be Made By An Arbitrator .....................8

          1.   Arbitrability is a Matter for the Arbitrator to Decide ..................................8

          2.   The APFA Has Done Nothing To Validly Challenge The Arbitration
               Agreements .....................................................................................................11

     C.   The APFA Has Not Met Its Burden of Establishing Entitlement to the
          Requested Injunctive Relief. ..........................................................................11

     D.   The APFA Cannot Satisfy Any Of The Four Winter Factors ............................13

          1.   The APFA Has No Possibility of Success on the Merits ............................13

               (a)   The   Arbitration   Agreements   are   Supported   by
                     Consideration. .....................................................................................13

               (b)   The   APFA   Has   No   Evidence   that   the   Arbitration
                     Agreements Were Procured by Fraud. .............................................14

               (c)   The APFA's Claim Of Unconscionability Fails. ...........................16

          2.   The APFA Cannot Show Any Irreparable Harm. .......................................18

          3.   Granting the APFA's Requested Injunctive Relief Will Result in
               Greater Harm to UATP. ..............................................................................20

          4.   Granting An Injunction Will Be Against The Public Interest ...................21

IV.  Conclusion ..................................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 24R, Inc.*,
   324 S.W.3d 564 (Tex. 2010) (*per curiam*) ...........................................................................13

*Adams v. Freedom Forge Corp.*,
   204 F.3d 475 (3d Cir. 2000)...............................................................................12, 13, 19

*Alves v. Ferguson*,
   Nos. 01-789 (SDW)(MCA), 07-1212 (SDW)(SCM), 2018 WL 1003264
   (D.N.J. Feb. 20, 2018)...............................................................................................12

*Arnold v. Homeaway, Inc.*,
   890 F.3d 546 (5th Cir. 2018) ........................................................................................9

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)..................................................................................................21

*Awuah v. Coverall N. Am.*,
   554 F.3d 7 (1st Cir. 2009)...........................................................................................10

*Boretsky v. Corzine*,
   No. CIV 08-2265 GEB DEA, 2009 WL 1312701 (D.N.J. May 11, 2009).............................12

*Bradley v. Pittsburgh Bd. of Educ.*,
   910 F.2d 1172 (3d Cir. 1990)........................................................................................12

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)..................................................................................................11

*City of Meridian, Miss. v. Algernon Blair, Inc.*,
   721 F.2d 525 (5th Cir. 1983) ...................................................................................19, 20

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)..................................................................................................18

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975)....................................................................................................2

*ECRI v. McGraw-Hill, Inc.*,
   809 F.2d 223 (3d Cir. 1986)........................................................................................19

*Edelson v. Cheung*,
   No. 13-5870 (JLL), 2015 WL 5316651 (D.N.J. Sept. 10, 2015)...........................................15

*Educ. Mgmt. Servs., LLC v. Slaikeu & Steamboat Mgmt. Grp., LLC*,
   No. SA-14-CA-135-OLG, 2014 WL 12586409 (W.D. Tex. Nov. 20, 2014)..........................19

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*,
   765 F.3d 205 (3d Cir. 2014), *holding modified by Reilly v. City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017)..................................................................................................15

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)..........................................................................................................8, 9

*Harvey v. Elder*,
   191 S.W.2d 686 (Tex. App. – San Antonio 1945) (*writ ref'd*)................................................16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   __ U.S. __, 139 S. Ct. 524 (2019).....................................................................................8, 9

*Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*,
   No. 80-2598, 1981 WL 2379 (D.D.C. Apr. 2, 1981)............................................................20

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*,
   546 S.W.3d 648 (Tex. 2018)................................................................................................14

*Juliano v. ITT Corp.*,
   No. 90-1575 (CSF), 1991 WL 10023 (D.N.J. Jan. 22, 1991).................................................12

*Kehoe v. Pollack*,
   526 S.W.3d 781 (Tex. App. – Houston [14th Dist.] 2017).....................................................15

*King Pharm., Inc. v. Corepharma, LLC*,
   No. 10-1878 (GEB-DEA), 2010 WL 1850200 (D.N.J. May 7, 2010)....................................21

*Klay v. All Defendants*,
   389 F.3d 1191 (11th Cir. 2004) ..........................................................................................21

*Kos Pharm., Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004)...............................................................................................19

*Lance v. Coffman*,
   549 U.S. 437 (2007)......................................................................................................2, 4, 7

*Loandepot.com v. Crosscountry Mortg., Inc.*,
   No. 18-12091 (KM) (JBC), 2019 WL 2613265 (D.N.J. June 24, 2019) .................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)................................................................................................... *passim*

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
   571 F.3d 299 (3d Cir. 2009)................................................................................................18

*Olde Disc. Corp. v. Tupman*,
  1 F.3d 202 (3d Cir. 1993)......................................................................................20

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
  920 F.2d 187 (3d Cir. 1990), *holding modified on other grouds by Reilly v.
  City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017)..................................................12

*In re Palm Harbor Homes, Inc.*,
  195 S.W.3d 672 (Tex. 2006)........................................................................13, 16, 17

*PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*,
  418 F.3d 535 (5th Cir. 2005) .................................................................................15

*Phillips Petroleum Co. v. U.S. Steel Corp.*,
  597 F. Supp. 443 (D. Del. 1984)...............................................................................2

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967)................................................................................................11

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  7 F.3d 1110 (3d Cir. 1993)......................................................................................21

*In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions*,
  133 F.3d 225 (3d Cir. 1998)....................................................................................19

*Rawls v. Pennsylvania Dep't of Corr.*,
  334 F. App'x 462 (3d Cir. 2009) ............................................................................12

*Reading Health Sys. v. Bear Stearns & Co.*,
  900 F.3d 87 (3d Cir. 2018)...............................................................................2, 7, 8

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010).................................................................................................10

*Richardson v. Coverall N. Am., Inc.*,
  Nos. 18-3393, 18-3399, 2020 WL 2028523 (3d Cir. Apr. 28, 2020) ............3, 9, 10

*Royston, Rayzor, Vickery & Williams, LLP v. Lopez*,
  467 S.W.3d 494 (Tex. 2015)..............................................................................16, 17

*S & T Oil Equip. & Mach., Ltd. v. Juridica Invs. Ltd.*,
  No. H-11-0542, 2011 WL 864837 (S.D. Tex. 2011)..............................................20

*Sitogum Holdings, Inc. v. Ropes*,
  800 A.2d 915 (N.J. Super. Ct. Ch. Div. 2002).......................................................16

*Stanford Dev. Corp. v. Stanford Condominium Owners Ass'n*,
  285 S.W.3d 45 (Tex. App. – Houston [1st Dist.] 2009) (*no pet.*)...........................21

*Sutherland v. Ernst & Young LLP*,
856 F. Supp. 2d 638 (S.D.N.Y. 2012)....................................................................20

*Taha v. Tires Plus*,
No. 10-4118, 2011 WL 2293330 (D.N.J. June 8, 2011).........................................13

*Tracey v. Recovco Mortg. Mgmt. LLC*,
No. 20-3298 (MAS)(TJB), 2020 WL 1666603 (D.N.J. Apr. 3, 2020) (Shipp, J.)............11, 12

*Waguih Siag v. King & Spalding LLP*,
No. H-10-367, 2010 WL 2671580 (S.D. Tex. June 30, 2010)..........................................20, 22

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)............................................................................ *passim*

**Statutes**

9 U.S.C. § 3.........................................................................................................1

9 U.S.C. § 4.........................................................................................................1

**Other Authorities**

16 C.F.R. § 436.7................................................................................................5

American Arbitration Association, Commercial Arbitration and Mediation
Procedures R-7(a), *available at*
https://adr.org/sites/default/files/Commercial%20Rules.pdf..................................10

Defendant, UATP Management, LLC ("UATP"), by its attorneys, submits this memorandum of law in opposition to Plaintiff APFA, Inc.'s ("APFA") Motion for Injunctive Relief (Doc. 10).  That Motion should be denied because, as set forth below, it has no basis in either fact or law.

## I.     <u>INTRODUCTION</u>

The APFA's Motion asks this Court to issue an entirely new type of injunction: one that preemptively bars a party from seeking to enforce arbitration agreements by having the Court declare – on a "preliminary" basis – that the agreements are unenforceable.  Even if the APFA had proffered a factual basis for this Court to issue such relief — and it has not submitted a single affidavit or declaration in support of *any* of the facts which it contends support declaring that the arbitration agreements are "null and void" — there is no reason for this Court to take up such an unprecedented and premature request.  The Federal Arbitration Act ("FAA") dictates, through two different provisions, the procedures which govern the enforcement of arbitration agreements: Section 3, which requires a court to stay an action "on application of one of the parties" if any suit is brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," and Section 4, which allows a party aggrieved by another party's refusal to arbitrate to petition a court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. §§ 3, 4.  By their terms, both sections envision a court addressing arbitration-related issues on the application of the party *seeking to enforce* the arbitration agreement, not the party seeking to evade arbitration.  If this Court ultimately decides that UATP is not entitled to a stay of proceedings pending arbitration, it can certainly say so.  There is no basis, and certainly no need, for preemptively (and, respectfully, prematurely) issuing declarations

1

addressing those issues in the context of a preliminary injunction motion.[1]

That aside, there are at least two facts that, standing alone, compel the denial of the APFA's motion.  First, this Court has not yet determined that it has jurisdiction over or that it is the proper forum for this matter.  "Federal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007).  Disputes over the proper forum should likewise be resolved before merits disputes.  *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95-96 (3d Cir. 2018).  On June 29, 2019, UATP filed a Motion to Dismiss (Doc. 11) which asserted, among other things (i) that this Court lacks subject matter jurisdiction because the APFA lacks associational standing, and (ii) that this matter should be dismissed under the doctrine of *forum non conveniens* (because the franchise agreements at issue all contain Texas forum selection clauses or arbitration clauses that mandate binding arbitration on an individual basis before the American Arbitration Association in Texas).  The issues presented in that Motion should be resolved before this Court considers the APFA's request for "injunctive" declaratory relief.

Second, the subjects of the APFA's motion are not even properly before this Court.  The APFA's motion seeks a preliminary injunction: (1) declaring that the Court may rule on gateway issues of arbitrability; (2) declaring the arbitration agreements null and void for want of consideration; and (3) enjoining UATP from seeking to enforce the arbitration agreements as a result of their supposed invalidity.  However, the arbitration agreements expressly delegate such questions – which go to the validity and enforceability of the arbitration agreements – to an

---

[1]     It does not appear that such a remedy even exists, as the U.S. Supreme Court has held that "prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975); *see also Phillips Petroleum Co. v. U.S. Steel Corp.*, 597 F. Supp. 443, 445 (D. Del. 1984) (citing *Doran* and concluding that Court has no authority to issue preliminary declaratory relief).

arbitrator.  They do so in two, separate ways: (1) by expressly requiring the parties to arbitrate disputes over the "enforceability of this agreement"; and (2) by providing that arbitration must be conducted pursuant to the American Arbitration Association's Commercial Rules.  As the Third Circuit recently made clear, "the incorporation of the AAA Rules in [an] arbitration clause constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability." *Richardson v. Coverall N. Am., Inc.*, Nos. 18-3393, 18-3399, 2020 WL 2028523, at *2 (3d Cir. Apr. 28, 2020).  Because the APFA has done nothing to challenge the validity of the delegation clauses, the FAA requires that they be enforced and that any challenges the members may have to the validity of their arbitration agreements be resolved in arbitration.  That alone requires the denial of the APFA's motion.

But even if this Court were to reach the merits of the APFA's motion, there is no basis for the entry of injunctive relief because the APFA has not met (and cannot meet) ***any*** of the requirements for the entry of injunctive relief:

- The APFA cannot establish a likelihood of success on the merits because it has not alleged any fraud specifically directed to the arbitration agreements (its unsupported allegations target the Membership Amendment as a whole) and the misrepresentations it purports to rely on (which concern the contents of the Amendment itself) cannot support a claim for fraud.  Its claim of unconscionability is similarly deficient because (i) its members actually had (and in many cases took) months to sign the Membership Agreement, and (ii) the fact that an arbitration agreement is "one-sided" does not establish substantive unconscionability.

- The APFA cannot establish a likelihood of irreparable harm as its alleged harms – being forced to spend money in individual arbitration proceedings and the risk of inconsistent

results – are simply not irreparable.  In fact, the Supreme Court has made clear that the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983).

- The APFA cannot show that the balance of equities tips in its favor because, unlike the APFA (which will suffer no cognizable harm if its motion is denied), UATP will have lost the benefits of its arbitration agreements, which the courts have consistently recognized constitutes irreparable harm.

- The APFA cannot show that the public interest favors the injunction it seeks.  To the contrary, the relief requested runs directly contrary to the "liberal federal policy favoring arbitration agreements." *Moses H. Cone,* 460 U.S. at 24.

For all these reasons, and those set forth below, the APFA's motion should be summarily denied.

## II.   FACTUAL BACKGROUND

### A.    UATP and its Relationship with Franchisees

UATP is a franchisor of indoor adventure parks that operate under the name Urban Air. (Declaration of Stephen Polozola in Support of UATP's Opposition to Plaintiff's Motion for Injunctive Relief ["Polozola Decl."], at ¶ 2.)  It has been engaged in the business of granting franchises for Urban Air businesses since 2015.  (*Id*.)  As of March of 2019 (before the outbreak of the COVID-19 pandemic), there were 131 Urban Air franchises spread across 34 states.  (*Id*. ¶ 3.)  An additional 67 franchisees have signed franchise agreements and are in the process of commencing operations.  (*Id*.)

Between 2015 (when it sold its first franchise) and 2019, all of UATP's franchise agreements contained a forum selection clause that required the parties to bring any claims they

had against each other in court in Texas.  (*Id*. ¶ 5.)  In 2019, UATP's franchise agreement was modified in several respects.  One such modification included the addition of an arbitration agreement, which requires that claims be arbitrated in Texas, on an individual basis, before the American Arbitration Association ("AAA") pursuant to its Commercial Arbitration Rules.  (*Id*. ¶¶ 6, 5.d.; Exh. C, § 23.B.)  Thirty-six franchisees signed the 2019 form of agreement containing the arbitration agreement.  (*Id*. ¶ 6.).

Around the same time, in April of 2019, UATP rolled out a new membership program for its franchisees.  (Compl. ¶ 24.)[2]  And, as part of that process, it presented its franchisees with an amendment (the "Membership Amendment").  The Membership Amendment was not an "adhesion" contract, as the APFA incorrectly declares.  Before it was presented to franchisees, the terms of the Membership Program were presented to UATP's Franchise Advisory Council ("FAC"), which is a group of 9 franchisees, elected entirely by UATP franchisees, who represent the interests of all of the franchisees in the system.  (*See* Polozola Decl. ¶ 16.)  The FAC provided comments on the program, and made suggested revisions.  (*Id*. ¶ 17.)  The vast majority of the FAC's comments were incorporated into the Membership Amendment before it was circulated to the franchisees for execution.  (*Id*.)

The execution process was not rushed, and no franchisee was denied the opportunity to

---

[2]      The APFA repeatedly claims that UATP violated the disclosure laws because the Membership Program that UATP rolled out in 2019 was not disclosed in its earlier disclosure documents.  That argument ignores both the law and common-sense.  Consistent with the principle that there is no fraud by retrospect, the FTC's Franchise Rule makes clear that "[a]ll information in the disclosure document shall be current as of the close of the franchisor's most recent fiscal year."  16 C.F.R. § 436.7.  There is no obligation to disclose changes that have not yet been made.  Were the rule otherwise, no franchisor could ever change any aspect of its system, because doing so would constitute a disclosure violation as to every franchisee who purchased a franchise before the change was made.

review the 5-page Amendment before they signed it, as the APFA falsely claims.  After the Membership Amendment was distributed to franchisees (in May 2019), those franchisees who chose to sign it returned executed copies to UATP on a rolling basis.  (Polozola Decl. ¶ 18.)  The last franchisee to return a signed copy did so in February 2020 – *over nine months* after the Membership Amendment was distributed.  (*Id.*)

Ultimately, the franchisees for approximately 63 Urban Air locations (that were not already on the 2019 form of franchise agreement) signed the Membership Amendment.  (Polozola Decl. ¶ 7.)  Among other provisions, that Amendment modified the dispute resolution provisions in the parties' franchise agreements to align them with the terms of the 2019 franchise agreement—*i.e.*, to require binding arbitration on an individual basis, in Texas, before the AAA under its Commercial Rules:

> [A]ny dispute between (a) you and any other owner and (b) Franchisor and its affiliates, and their respective subsidiaries, directors, officers, employees, agents, shareholders, designees, and representatives (collectively, the 'Franchisor Indemnitees') arising under, out of, in connection with, or in relation to (i) any claim, (ii) the negotiation of this agreement (including any other agreement between you and Franchisor), (iii) the offer and sale of the franchise opportunity, (iv) representations made prior to the execution of this agreement, and (v) this agreement or any other agreement between you and franchisor, any attachments thereto, **or the enforceability of this agreement** must be submitted to binding arbitration before a single arbiter **with the American Arbitration Association pursuant to its Commercial Industry Rules** in effect at the time the arbitration demand is filed. Any arbitration demand will be subject to the Federal Arbitration Act. Franchisee, the owners, and the Franchisor Indemnities agree that each may bring claims against the other only in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.

(*Id.* ¶ 7; *see also* Doc. 1 at PageID 399; emphases added.)  According to the APFA, an unspecified number of its members signed the Membership Amendment. (Compl. ¶ 35.)

### B.   The APFA and its Efforts to Circumvent the Individual Franchisees' Contractual Obligations

The APFA – a recently formed organization that represent the interests of barely 25% of

the approximately 198 Urban Air franchises in the United States (Polozola Decl. ¶ 3; Compl. ¶¶ 6, 7) – filed this action in April of 2020.  Its Complaint (Doc. 1) asserts a variety of grievances and fraud claims which it has attempted to package into a single claim for declaratory judgment. Because many members of the APFA signed arbitration agreements, on May 26, 2020, UATP advised the APFA that it intended to enforce the arbitration agreements.  (Doc. 10-2 at PageID 476.)  To do so efficiently, it asked the APFA's counsel to provide a list of those members who had entered into arbitration agreements.  (*Id.*)

The APFA's counsel never responded to that letter.  Instead, on June 16, 2020, the APFA filed this motion, which seeks to have all of the arbitration agreements declared invalid on a "preliminary" declaratory basis, and an injunction entered which bars UATP from seeking to enforce those agreements.[3]

## III.  <u>ARGUMENT</u>

### A.  **This Motion Should Be Stayed Pending This Court's Ruling On UATP's Motion To Dismiss For Lack of Subject Matter Jurisdiction or Under the <u>Doctrine of <em>Forum Non Conveniens</em></u>**

While deficient for many reasons, the APFA's motion cannot be granted because it is premature.  It is settled law that "threshold disputes over venue and jurisdiction should be resolved before merits disputes."  *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95-96 (3d Cir. 2018); *see also Lance*, 549 U.S. at 439 ("Federal courts must determine that they have jurisdiction before proceeding to the merits.").  "Resolving a dispute over arbitrability requires a district court

---

[3]     The APFA appears to seek to enjoin only the enforcement of the arbitration agreements contained in the Membership Amendment.  In that regard, the APFA does not state whether any of its members signed the 2019 form of the franchise agreement, which also contains an arbitration agreement.  (Polozola Decl. ¶¶ 6, 5.d.; Exh. C as § 23.B.)  UATP's arguments in this Opposition apply equally to the arbitration clause contained in the 2019 form of the franchise agreement.

to apply its law-declaring power regarding the parties' right to arbitrate" and, therefore, is a merits issue. *Reading Health Sys*, 900 F.3d at 96 ("the District Court, confronted with a plaintiff seeking to compel arbitration and a defendant moving to transfer the action to compel arbitration based on a forum-selection clause, properly addressed the transfer question before the question of arbitrability").

On June 29, 2020, UATP filed a motion to dismiss this suit for lack of subject matter jurisdiction or, in the alternative, on grounds of *forum non conveniens* or, in the alternative, to stay the action pending arbitration. (Doc. 11). Before addressing the APFA's request for an injunction, this Court must first rule on UATP's motion to dismiss and address whether the APHA has associational standing and, if so, whether this action should be dismissed on *forum non conveniens*.

**B.    The APFA's Motion Must Be Denied Because All Of The Requested Relief Hinges On A Determination That Must Be Made By An Arbitrator**

### 1.    Arbitrability is a Matter for the Arbitrator to Decide

The APFA's motion must be denied because the relief it seeks — an order enjoining UATP from seeking to enforce the arbitration agreements until the court rules on the merits of its claim for declaratory relief — hinges on the resolution of an issue (the enforceability and validity of the arbitration agreements) that the parties clearly and unmistakably delegated to an arbitrator. Consistent with the principle that "[a]rbitration is simply a matter of contract between the parties," the Supreme Court has made clear that parties may "agree to submit the arbitrability question itself to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, __ U.S. __, 139 S. Ct. 524, 527 (2019) (the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability

questions as well as underlying merits disputes").[4]   Deciding whether a party agreed to submit issues of arbitrability to arbitration is, in the Supreme Court's words, a "fairly simple" matter.  *First Options*, 514 U.S. at 943.   "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute," the question of who (the arbitrator or the court) decides the validity, scope, or enforceability of an agreement to arbitrate "turns upon what the parties agreed about *that* matter."   *Id*.  If there is "clear and unmistakable evidence" that the parties intended the issue of arbitrability to be decided by an arbitrator, "a court may not decide …arbitrability questions."  *Henry Schein*, 139 S. Ct. at 530-31.   "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."  *Id*. at 429.

Here, there is such evidence, notwithstanding the APFA's mistaken claim that the "arbitration agreement is silent as to the question of who determines arbitrability."  (*See* Doc. 10-1 at PageID 457.)   The Membership Amendment contains a broad arbitration clause which requires that the parties arbitrate, among other things, any dispute "arising under, out of, in connection with, or in relation ... **the enforceability of this agreement** ...."   (*See* Doc. 1 at PageID 399; Polozola Decl. ¶ 7, emphasis added.)   The Membership Amendment also provides that arbitration will be "**pursuant to [the AAA's] Commercial Industry Rules in effect at the time the arbitration demand is filed**."   (*Id.*)  "[S]tipulating that the AAA Rules will govern the arbitration of disputes constitutes such 'clear and unmistakable' evidence" that the parties delegated the issue of arbitrability to the arbitrator.  *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 552 (5th Cir. 2018); *accord Richardson v. Coverall N. Am., Inc.*, Nos. 18-3393, 18-3399, 2020 WL 2028523, at \*2-\*3 (3d Cir.

---

[4]      As the AFPA correctly noted, the arbitration agreements are subject to the Federal Arbitration Act. (Doc. 10-1 at PageID 455.)

Apr. 28, 2020) (franchise agreement incorporating AAA rules effectively delegated issue of arbitrability to arbitrator); *Loandepot.com v. Crosscountry Mortg., Inc.*, No. 18-12091 (KM) (JBC), 2019 WL 2613265, at *6 (D.N.J. June 24, 2019) ("It follows that by designating and incorporating the AAA rules, a contractual arbitration provision delegates issues of arbitrability to the arbitrator."). The AAA's Commercial Rules specifically state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the **existence, scope, or validity** of the arbitration agreement or to the **arbitrability** of any claim or counterclaim." *See* American Arbitration Association, Commercial Arbitration and Mediation Procedures R-7(a), *available at* https://adr.org/sites/default/files/Commercial%20Rules.pdf (emphasis added). As the Third Circuit recently observed in holding that the incorporation of identical language showed an intent to delegate arbitrability, "[t]hat provision 'is about as 'clear and unmistakable' as language can get.'" *Richardson*, 2020 WL 2028523, at *2-*3 (quoting *Awuah v. Coverall N. Am.*, 554 F.3d 7, 11 (1st Cir. 2009)).

Because the parties agreed to delegate arbitrability issues to an arbitrator, the APFA's motion necessarily fails, and any challenges the APFA has to the enforceability of the arbitration agreements must be presented to an arbitrator. The fact that the APFA has asserted that the Membership Amendments as a whole were fraudulently induced (*see* Doc 10-1 at PageID 460) or are otherwise unenforceable (for lack of consideration or because they are supposedly unconscionable) makes no difference. In *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010), the Supreme Court made clear that, when considering a challenge to a delegation provision, the court must consider only arguments "specific to the delegation provision." *Id*. at 73. If the party opposing arbitration fails to "challenge[] the delegation provision specifically," that provision must be deemed valid, "leaving any challenge to the validity of the [a]greement as a whole for the

arbitrator." *Id*. at 72.   Even if the APFA had actually challenged the arbitration agreement generally – and it has not – it has done nothing to challenge the delegation clauses specifically. Therefore, the delegation clauses are valid, and should be enforced.

### 2.   The APFA Has Done Nothing To Validly Challenge The Arbitration Agreements

Assuming the APFA had actually done anything to challenge the validity of the delegation clauses specifically (and further assuming those challenges were successful), its challenges to the validity of the arbitration agreements would still need to be submitted to arbitration.   Despite its efforts to mask the nature of its claim, the challenges the APFA raises to the arbitration agreements – that they were induced by fraud and lack consideration – are actually the same challenges it raises to the entire Membership Amendment.   That is not enough to take a case away from an arbitrator.   The FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46, (2006).

### C.   The APFA Has Not Met Its Burden of Establishing Entitlement to the <u>Requested Injunctive Relief</u>.

If the Court were to consider the merits of the APFA's motion, it should deny it outright because the APFA has done nothing to show it is entitled to the extraordinary relief it seeks.   A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,

[3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. at 20.  The movant bears the burden of establishing each of these factors.  *Tracey v. Recovco Mortg. Mgmt. LLC*, No. 20-3298 (MAS) (TJB), 2020 WL 1666603, at *2 (D.N.J. Apr. 3, 2020) (Shipp, J.) (citing *Winter*).

To meet its burden, the movant must produce *evidence* sufficient to convince the trial judge that the required factors favor the issuance of preliminary relief.  *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990), *holding modified on other grounds by Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017).[5]  Conclusory allegations are insufficient (*see Alves v. Ferguson*, Nos. 01-789 (SDW)(MCA), 07-1212 (SDW)(SCM), 2018 WL 1003264, at *2 (D.N.J. Feb. 20, 2018)), as are the assertions of the movant's counsel.  *See Juliano v. ITT Corp.*, No. 90-1575 (CSF), 1991 WL 10023, at *5 (D.N.J. Jan. 22, 1991) ("ITT bears the burden of proving the falsity of Juliano's writings.  The assertions of ITT's counsel that the communications are false does not serve to convince the court that ITT will meet this burden.").  Allegations contained in an unverified complaint are likewise insufficient.  *Tracey*, 2020 WL 1666603, at *3. The facts supporting an entitlement to injunctive relief must be based on facts set forth in affidavits, deposition testimony, or other documents.  *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d

---

[5]      *See also Rawls v. Pennsylvania Dep't of Corr.*, 334 F. App'x 462, 464 (3d Cir. 2009) (district court did not err in concluding that movant failed to make showing required for preliminary injunction where movant "did not submit evidence substantiating his claims").

Cir. 2000).[6]

The APFA has proffered no such evidence.  In fact, the APFA has failed to submit *any* evidence in support of any of the four *Winter* factors.  The only evidence it submitted – the affidavit of UATP's counsel Andrew Bleiman (Doc 10-2) – merely addresses a letter he received from UATP's attorneys relating to UATP's intention to enforce the AFPA's members' arbitration agreements.  Mr. Bleiman's affidavit offers no evidence on any of the four *Winter* factors.  For this reason alone, the motion must should be denied.

**D.     The APFA Cannot Satisfy Any Of The Four *Winter* Factors**

Aside from its lack of factual support, the APFA's motion fails because it cannot, as a matter of law, satisfy any of the factors necessary to support the grant of injunctive relief.

**1.     The APFA Has No Possibility of Success on the Merits**

A plaintiff seeking a preliminary injunction must first establish that he is likely to succeed on the merits of his claim.  *Winter*, 555 U.S. at 22.  Absent that showing, the Court may not grant injunctive relief, "regardless of what the equities seem to require." *Adams*, 204 F.3d at 484.  The APFA cannot make the required showing of likelihood of success on the merits.

**(a)     *The Arbitration Agreements are Supported by Consideration.***

The APFA's first argument — that the arbitration agreements are not supported by consideration — misses the mark.  "[W]hen an arbitration clause is part of a larger, underlying

---

[6]     While evidence could also be adduced at a hearing, a moving party who proffers no evidence along with its motion and therefore fails to raise a factual dispute on the papers is not entitled to a hearing on its motion for preliminary injunction. *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) (party moving for preliminary injunction is not entitled to a hearing where she fails to produce affidavits which provide "any colorable factual support for her claim"); *Boretsky v. Corzine*, No. CIV 08-2265 (GEB)(DEA), 2009 WL 1312701, at *3 (D.N.J. May 11, 2009) (movant not entitled to a hearing on motion for preliminary injunction where movant had not presented adequate evidence with moving papers; court rejected argument that movant should be permitted a hearing to submit further evidence).

13

contract, the remainder of the contract may suffice as consideration for the arbitration clause." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006).[7]  In addition, the consideration for an arbitration agreement "may take the form of bilateral promises to arbitrate." *Id.*; *accord In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (per curiam); *see also Taha v. Tires Plus*, No. 10-4118 (RBK/KMW), 2011 WL 2293330, at *3 & n.3 (D.N.J. June 8, 2011) (finding that consideration exists where each party agreed to arbitrate its claims because, "[u]nder New Jersey law, a mutual promise is sufficient consideration to create a binding contract").

Here, the arbitration agreements are part of larger contractual relationships between the franchisees and UATP—the Membership Amendments—which modified the parties' rights under the original franchise agreements.  (*See* Doc. 1 at PageID 396.)  This underlying contract (the Membership Amendment) therefore constituted valid consideration for the arbitration agreements. *See In re Palm Harbor Homes, Inc.*, 195 S.W. 3d at 676.  Further, the arbitration agreements contain mutual promises to arbitrate.  (*See* Doc. 1 at PageID 399.)  With the exception of certain limited carve-outs, the franchisees and UATP agreed that "any dispute" covered by the broad terms of the arbitration agreements would be submitted to arbitration. (*Id.*)  That constitutes additional consideration for the arbitration agreements.

### (b)     *The APFA Has No Evidence that the Arbitration Agreements Were Procured by Fraud.*

The APFA's claim that the arbitration agreements were fraudulently induced fares no better.  To demonstrate that the agreements were procured by fraud, the APFA would have needed to produce evidence which showed: "(1) the defendant 'made a material representation that was

---

[7]     As the APFA correctly notes, Texas law governs the franchise agreements pursuant to the choice-of-law provision.  (Doc. 10-1 at PageID 452.)

false'; (2) the defendant 'knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth'; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 653 (Tex. 2018).  But the APFA offers nothing which shows that any of these requirements are met.  It merely refers to facts "[a]s set forth in the Complaint" (which is unverified) – not any affidavits, or any declarations, or any deposition testimony. (Doc. 10-1, at PageID 460).  For example, while the APFA claims its members were misled by purportedly false statements that were conveyed through unidentified communications between UATP and the franchisees, neither these communications nor any affidavits describing them are in the record. *See, e.g., Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 219 (3d Cir. 2014), *holding modified by Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) (affirming finding by district court that movant failed to demonstrate irreparable harm and was not entitled to injunction where movant's only evidence of irreparable harm was speculative); *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005) (affirming denial of motion for preliminary injunction where plaintiff's "motion for a preliminary injunction was predicated on the breach of a contract that was never put before the district court.").

Similarly, the APFA has not come forward with any proof about each franchisee's knowledge, reliance, or, critically, the alleged statements' falsity. *See Edelson v. Cheung*, No. 13-5870 (JLL), 2015 WL 5316651, at *7 (D.N.J. Sept. 10, 2015) (movant failed to demonstrate likelihood of success on the merits where he provided no evidence to support the "conclusory statement" that certain statements were a "misrepresentation").  Simply put, the APFA has come nowhere close to meeting its burden to show that the arbitration agreements were induced

by fraud.

To the extent the APFA is predicating its fraud claim on some assertion that UATP misrepresented the scope of the Membership Amendment, that would fail even if the APFA had specified what the misrepresentation was or attempted to show that any member was actually "misled" by UATP.  "A party who signs a contract is presumed to know its contents."  *Kehoe v. Pollack*, 526 S.W.3d 781, 793 (Tex. App. – Houston [14th Dist.] 2017).  "When a party signs a contract after having an opportunity to read the contract, the law presumes that the party knows and accepts all of the contract's terms, even if the party chose not to read the contract."  *Id*. at 793-94.  Therefore, "[a] party to a written contract cannot justifiably rely on an oral representation that contradicts the contract's unambiguous terms."  *Id*. at 794.; *accord Harvey v. Elder*, 191 S.W.2d 686, 689 (Tex. App. – San Antonio 1945) (writ ref'd) (holding that doctor's oral representation that document was a receipt and his failure to disclose that it contained releases of the patient's claims, as a matter of law, did not constitute a "trick or artifice" which prevented the patient from reading the release before signing it).  For this reason as well, the APFA's fraud claims fail.

### (c)     The APFA's Claim Of Unconscionability Fails.

To succeed on its argument that the arbitration agreements are unconscionable, the APFA must show that they are "substantively or procedurally unconscionable, or both."[8] *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015).  "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision."

---

[8]     Unlike Texas law, New Jersey law requires *both* procedural and substantive unconscionability.  *See Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 922 (N.J. Super. Ct. Ch. Div. 2002).  Because the APFA cannot meet the lower Texas standard, it would likewise be unsuccessful under New Jersey law (even if New Jersey law applied, which it does not).

*In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677.

The APFA cannot show either procedural or substantive unconscionability. Aside from its incorrect argument that arbitration agreements are substantively unconscionable because "APFA members received no consideration for surrendering their right to sue and freely associate" (Doc. 10-1 at PageID 461-62), the APFA's substantive unconscionability argument rests entirely on its claim that the arbitration agreement is one-sided. However, it is not unconscionable for an agreement to be somewhat one-sided in that "certain claims are excepted from those to be arbitrated." *Lopez*, 467 S.W.3d at 501.

The APFA's arguments of procedural unconscionability are similarly meritless. According to the APFA, the Membership Amendment is procedurally unconscionable because: (i) it was an adhesion contract; (ii) the franchisees were misled about the importance of the Membership Amendment; (iii) UATP "harassed and threatened" the franchisees until they signed the amendment; and (iv) the franchisees were not provided with a meaningful opportunity to review the Membership Amendments before they signed them. But as with the rest of its claims, the APFA provides ***absolutely zero*** evidence to support any of these conclusory allegations. There is no evidence, for example, as to when each franchisee received the Amendment, how long each took to sign, and how (if at all) UATP "harassed" them to sign. The only evidence, in fact, belies the APFA's conclusions.

As set forth in Mr. Polozola's Declaration, the Membership Amendment was negotiated, and franchisees had as long as they needed to sign it. (Polozola Decl. ¶¶ 16-18.)[9] Some did not return a signed copy of the Amendment until months after they first received it. (*Id.*) And, any

---

[9] Regardless, "adhesion contracts are not *per se* unconscionable or void." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678.

argument that these sophisticated franchisees were somehow misled about the contents of the Membership Amendment is, respectfully, silly.  The arbitration agreements are conspicuous—they are written in bold, all-caps, underlined font (Doc. 1 at PageID 399) – and under Texas law, a party to an arbitration agreement "is presumed to have knowledge of and understand its contents." *Lopez*, 467 S.W.3d at 501; *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 679 (unconscionability principles are applied only when necessary "to prevent unfair surprise or oppression").

### 2.    The APFA Cannot Show Any Irreparable Harm.

The APFA also fails the second *Winter* preliminary injunction factor — it cannot show that its members are likely to suffer any irreparable harm in the absence of preliminary relief.  In an attempt to meet this burden, the APFA repeats its oft-repeated refrain that, absent an injunction, it and its members would suffer irreparable harm because the franchisees would be required to arbitrate claims "despite the fact that members never agreed to arbitrate and did not receive consideration for this purported agreement."  (Doc. 10-1 at PageID 467).  As shown above, these arguments are incorrect.

The APFA's remaining arguments are likewise ill-advised.  The APFA claims that its members will suffer irreparable harm because "individual arbitrations will likely result in a patchwork of results."  (*Id.*)  But the Supreme Court has explained that the FAA "*requires piecemeal resolution when necessary to give effect to an arbitration agreement.*"  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983); *accord Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (the FAA "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums");

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 308 (3d Cir. 2009) ("rather than containing a strong policy against piecemeal litigation, the FAA has a policy in favor of it, at least to the extent necessary to preserve arbitration rights, as the Supreme Court made clear in *Moses H. Cone*").   In fact, under the FAA, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone*, 460 U.S. at 20.

In accordance with these principles, "courts repeatedly have held that the potential for inconsistent results is not a defense under the FAA to the enforcement of an arbitration provision." *Educ. Mgmt. Servs., LLC v. Slaikeu & Steamboat Mgmt. Grp., LLC,* No. SA-14-CA-135-OLG, 2014 WL 12586409, at *9 n.102 (W.D. Tex. Nov. 20, 2014) (gathering cases).   For example, in *In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions*, 133 F.3d 225, 234 (3d Cir. 1998), the Third Circuit reversed a district court's decision to deny a motion to compel based on the court's concern for potential "inconsistent results and inefficiencies" given the dozens of putative class actions against Prudential.   Citing *Moses H. Cone*, the Third Court reasoned that "[w]hile we share the district court's apprehension toward inconsistent results and inefficiencies caused by arbitration, we cannot frustrate the enforcement of the arbitration clause pursuant to the [Federal Arbitration Act] on the basis of this concern." *Id.*

Finally, the APFA alleges it will suffer irreparable harm because "individual franchisees would be required to spend considerable monies in connection with" arbitration proceedings. (Doc. 10-1 at PageID 467-68).   This, too, is insufficient.   "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 728 (3d Cir. 2004); *see also City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983) (expenses of arbitration

do not constitute irreparable harm).  Indeed, the Third Circuit has "*never* upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1986) (emphasis added). Regardless, since the franchisees agreed to arbitrate, it is difficult to see how they can complain about the costs associated with that process.[10]

### 3.   Granting the APFA's Requested Injunctive Relief Will Result in Greater Harm to UATP.

The APFA also fails to satisfy the third *Winter* factor.  Unlike the APFA, which will suffer no harm absent the issuance of an injunction, UATP would be irreparably harmed if the injunction the APFA seeks were issued.  Injunctions against arbitration cause irreparable harm.  *See, e.g., City of Meridian, Miss.,* 721 F.2d at 529 ("[T]he expense and delay of court action will deprive [the party] of a significant portion of its bargain.  Since swift and less costly resolution of disputes is the primary reason for an agreement to arbitrate, an injunction against arbitration can cause irreparable harm."); *cf. Olde Disc. Corp. v. Tupman*, 1 F.3d 202, 213 (3d Cir. 1993) (recognizing a that party is irreparably harmed by the loss of the right to arbitrate in the contractually selected forum).[11]  Therefore, the balance of the hardships strongly favors denying the requested injunctive

---

[10]    In any event, the Court cannot "enter a mass preliminary injunction," such as that requested by the APFA, "in the absence of a foundation from which one could infer that *all* (*or virtually all*) members of a group are irreparably harmed."  *Adams*, 204 F.3d at 487(emphasis added).  The APFA has proffered no proof that any of its members—much less all of them—would suffer irreparable harm.

[11]    Numerous district courts have similarly recognized the irreparable harm UATP would suffer if the APFA's motion were granted.  *See, e.g., S & T Oil Equip. & Mach., Ltd. v. Juridica Invs. Ltd.*, No. H-11-0542, 2011 WL 864837, at *6 (S.D. Tex. 2011) ("Enjoining the arbitration harms [a party seeking arbitration] by preventing it from exercising the bargained for arbitration rights under" the relevant agreements.); *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 643 (S.D.N.Y. 2012) (denial of arbitration rights "may irrevocably deprive [defendant] of at least a portion of that which it unquestionably bargained for"); *Waguih Siag v. King & Spalding LLP*, No. H-10-367, 2010 WL 2671580, at *2 (S.D. Tex. June 30, 2010) ("The third factor likewise

relief.

#### 4.    Granting An Injunction Will Be Against The Public Interest

The APFA argues that the public interest is best served by enjoining arbitration because it did not sign the arbitration agreements itself and, therefore, neither it nor its members *who did sign the agreements* should be bound by them.  This argument defies logic.  The APFA cites no law for the proposition that its members are unbound from the agreements they signed simply because they subsequently decided to join an entity (the APFA) that did not itself have an arbitration agreement.  In fact, the law is the opposite.  Associations suing in a representative capacity are bound by the same limitations and obligations as their members.  *See Klay v. All Defendants*, 389 F.3d 1191, 1202–03 (11th Cir. 2004) (arbitration clause analysis that applied to members also applied to association suing in representative capacity for members); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) (where a principal is bound under an arbitration clause, its representatives are also covered).  Likewise, under Texas law, a representative who sues on behalf of a contracting party stands in the contracting party's shoes and is bound by all of that party's obligations—including the arbitration provisions set forth in the contract.  *Stanford Dev. Corp. v. Stanford Condo. Owners Ass'n*, 285 S.W.3d 45, 49 (Tex. App. – Houston [1st Dist.] 2009) (no pet.).  The public interest would hardly be served if individuals could escape their contractual obligations merely by associating with others to bring

---

weighs in favor of King & Spalding, as enjoining the arbitration prevents King & Spalding from exercising the bargained for arbitration clause in the agreement with Siag."); *Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*, No. 80-2598, 1981 WL 2379, at *6 (D.D.C. Apr. 2, 1981) (recognizing "irreparable and immediate harm" to party by destruction of the "arbitration process which it specifically bargained for and paid for at the time the collective bargaining agreement was issued").

their claims together. *See King Pharm., Inc. v. Corepharma, LLC*, No. 10-1878(GEB-DEA), 2010 WL 1850200, at *4 (D.N.J. May 7, 2010) ("the public interest generally weighs in favor of enforcing private contracts").[12]

The APFA's remaining argument – that the public interest would be served by its requested injunction because "public policy favors consolidated litigation over piecemeal litigation" (Doc. 10-1 at PageID 470) – fails for the same reasons noted above. The FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone*, 460 U.S. at 20. Therefore, contrary to the APFA's assertion, the public interest is actually ***disserved*** by failing to enforce the FAA. Indeed, "enjoining arbitration proceedings would disserve the public interest by undermining confidence in arbitration provisions generally." *King & Spalding*, 2010 WL 2671580, at *2. Accordingly, this element, like all the others, weighs conclusively in favor of denying the APFA's Motion.

## IV.   **CONCLUSION**

For the foregoing reasons, the APFA's motion should be denied, and the Court should award UATP any such further relief to which it may be justly entitled, including its attorneys' fees and costs.

---

[12]   This is particularly true where, as here, arbitration agreements are involved, as there is a strong public policy in favor of arbitration agreements. *See Moses H. Cone*, 460 U.S. at 24 (the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements"). That policy is so strong that the Supreme Court has held that all doubts must be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Dated:  July 6, 2020

Respectfully submitted,

/s/ David S. Sager
David S. Sager
William J. Diggs
DLA Piper LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
(973) 520-2550
david.sager@dlapiper.com
william.diggs@dlapiper.com

Norman M. Leon (*pro hac vice* forthcoming)
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
(312) 368-4044
norman.leon@dlapiper.com

Karen C. Marchiano (*pro hac vice* forthcoming)
DLA Piper LLP (US)
2000 University Avenue
East Palo Alto, CA 94303
(650) 833-2170
karen.marchiano@dlapiper.com

*Attorneys for Defendant UATP Management LLC*

23