**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| APFA, INC.,<br><br>     Plaintiff,<br><br>     v.<br><br>UATP MANAGEMENT, LLC,<br><br>     Defendant. | Civil Action No. 20-5007 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon two motions. The first is Plaintiff APFA, Inc.'s ("Plaintiff") Motion for a Preliminary Injunction. (ECF No. 10.) Defendant UATP Management, LLC ("Defendant") opposed (ECF No. 12), and Plaintiff replied (ECF Nos. 16, 17). The second is Defendant's Motion to Dismiss Plaintiff's Complaint. (ECF No. 11.) Plaintiff opposed (ECF No. 15), and Defendant replied (ECF No. 19). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendant's Motion to Dismiss is granted on *forum non conveniens* grounds, but the matter is not dismissed. Instead, the matter is transferred to the United States District Court for the Northern District of Texas. Furthermore, Plaintiff's Motion for a Preliminary Injunction is denied.

**I. BACKGROUND**

Defendant is a national franchisor of indoor adventure parks known as "Urban Air" which provide customers with "wall-to-wall trampolines, foam pits, climbing walls, go-karts, and related activities." (Compl. ¶¶ 1, 8, ECF No. 1.) Plaintiff, known as the "Adventure Park Franchisee

Association," is a Delaware corporation which "was organized and exists for the purpose of protecting and preserving the rights of Urban Air franchisees and . . . to serve as an official voice of the Urban Air franchise community." (*Id.* ¶ 6.) Plaintiff asserts it "currently represents in excess of fifty . . . Urban Air franchised locations located throughout the United States." (*Id.* ¶ 7.)

Federal Trade Commission regulations require franchisors "to provide every prospective franchisee with [a franchise disclosure document] and related agreement[] that details any and all of the initial and ongoing fees that a franchisor will charge to the franchisee." (*Id.* ¶ 22 (citing 16 C.F.R. § 436.5(f)).) Urban Air franchisees and Defendant execute franchise agreements that are "substantially similar in form and substance" and "typically non-negotiable." (*Id.* ¶ 8.) Plaintiff asserts that in recent years, disputes between Plaintiff, "on behalf of its members and Urban Air franchisees," and Defendant have arisen on matters "arising out of and relating [to] the franchise agreement[s.]" (*Id.* ¶ 133.) These disputes include, *inter alia*, (1) Defendant's unilateral amendments to the franchise agreements; (2) Defendant's unilateral implementation of a "Membership Program" and imposition of associated fees; (3) Defendant's unilateral imposition of monthly gross sales fees; (4) Defendant's use of "fraudulent and false pretenses" to increase franchisee obligations; (5) Defendant's failure to "negotiate[] purchase agreements with vendors and suppliers 'for the benefit of franchisees'"; (6) the mandatory use of Defendant's "vendor[s] for construction and installation of attractions" and insurance; and (7) Defendant's "pattern and practice of aggressive communications, retaliatory conduct, bullying tactics[,] and non-responsiveness to franchisees who have challenged, criticized[,] or taken issue with [its] mandates, programs[,] and initiatives." (*Id.* ¶¶ 47, 74, 85, 97, 122, 134; *see generally id.* ¶¶ 22–130.)

According to Plaintiff, it "has repeatedly attempted to engage with [Defendant] and Urban Air's equity stakeholders in a dialogue to address" these issues, but such requests have been rejected. (*Id.* ¶ 116.) On April 23, 2020, Plaintiff filed a one-count Complaint against Defendant

2

seeking declaratory judgment. (*See generally id.*) Plaintiff requests a judicial declaration stating that, *inter alia*, (1) Defendant may not unilaterally amend the franchise agreements; (2) Defendant may not unilaterally impose certain fees; (3) Defendant has "abused its authority under the franchise agreements"; and (4) Defendant may not unilaterally implement certain insurance and vendor programs. (*Id.* at 42–45.) Plaintiff now moves to enjoin Defendant "from seeking to enforce the unconscionable arbitration provisions contained in its unlawfully-obtained amendments to some—but not all—of [Plaintiff's] members' franchise agreements." (ECF No. 10.) Defendant, on the other hand, moves to dismiss Plaintiff's Complaint or, alternatively, stay the action pending arbitration. (ECF No. 11.)

## II.    DISCUSSION

Defendant sets forth three arguments in favor of its Motion to Dismiss: (1) Plaintiff has not met its burden of establishing associational standing to bring suit on behalf of its members, (Def.'s Moving Br. 9–17, ECF No. 11-1); (2) Plaintiff's members' franchise agreements contain forum-selection clauses designating Texas as the exclusive forum for disputes, (*id.* at 19–21); and (3) Plaintiff's members' franchise agreements compel arbitration, (*id.* at 22–25). For the purposes of the instant Memorandum Opinion, the Court focuses solely on Defendant's second argument, that Plaintiff's members' franchise agreements require disputes be resolved in Texas.

### A.    Forum-Selection Clauses[1]

Plaintiff attaches several exhibits to its Complaint, including copies of two franchise agreements it maintains "set[] forth the fees which [Defendant] is authorized to charge franchisees." (Compl. ¶ 26; *see also* 2016 Franchise Disclosure Doc. *48–208,[2] Ex. A to Compl.,

---

[1] "[A]ssociations suing in a representative capacity are bound by the same limitations and obligations as their members[.]" *Klay v. All Defendants*, 389 F.3d 1191, 1202–03 (11th Cir. 2004), *cert. denied*, 544 U.S. 1061.

[2] Page numbers preceded by an asterisk refer to the page number of the ECF header.

3

ECF No. 1; 2017 Franchise Disclosure Doc. *210–394, Ex. B. to Compl., ECF No. 1.) These agreements, however, both contain forum-selection clauses requiring dispute resolution in Texas district courts. (*See* 2016 Franchise Disclosure Doc. *82–83 ("Litigation must be instituted and maintained in the district courts of Tarrant County, Texas (subject to applicable state law)."); *id.* at *108 ("The exclusive venue for disputes arising out of this Agreement shall be the state or federal, as applicable, district courts situated in Tarrant County, Texas."); *id.* at *156 ("[Any dispute arising under or in connection with this agreement . . . shall be resolved exclusively by the state district courts located in Tarrant County, Texas.]"); *id.* at *169 ("I irrevocably submit to the jurisdiction of the state court situated in Tarrant County, Texas, or the U.S. District Court for the Northern District of Texas, Fort Wayne Division[.]"); *id.* at *172; *see also* 2017 Franchise Disclosure Doc. *242, *274, *322.)

Plaintiff's Complaint and request for declaratory relief rely upon these franchise agreements in which the forum-selection clauses are apparent. For example, Plaintiff asserts it "brings this action for declaratory relief on behalf of its members *to preserve and protect their rights under the franchise agreements*." (Compl. ¶ 5 (emphasis added); *see also id.* ¶ 77 (Defendant "has failed to support franchisees and has implemented programs, mandated vendors and suppliers, and imposed fees . . . upon franchisees . . . *in express violation of the terms and provisions of the franchise agreements* signed by Urban Air franchisees[.]" (emphasis added)).) Plaintiff also maintains that "an actual controversy has arisen and now exists between" the parties "*concerning the rights of Urban Air franchisees under the express terms of their franchise agreements*, and [Defendant's] rights, if any, to take the actions, engage in the conduct[,] and implement the changes detailed herein." (*Id.* ¶ 136 (emphasis added).) Furthermore, Plaintiff asserts that its members' franchise agreements with Defendant "are substantially similar in form and substance." (*Id.* ¶ 8.)

4

Finally, in its opposition to Defendant's instant motion, Plaintiff asserts the following in response to Defendant's invocation of the Texas forum-selection clauses: Defendant "argues that federal law requires this Court to respect and adhere to the forum[-]selection clauses in the various franchise agreements; however, this presupposes that those clauses are valid and enforceable against all APFA members. They are not." (Pl.'s Opp'n Br. 22, ECF No. 15.) Plaintiff, however, does not provide any factual support for its assertion that not all of its members are subject to the forum-selection clauses. (*See generally id.*) Furthermore, the Court does not find "They are not" to be a convincing argument. Accordingly, given Plaintiff's (1) assertion that each of its members' franchise agreements are "substantially similar in form and substance"; (2) attachment of the franchise agreements, which include the forum-selection clauses, to its Complaint; and (3) unpersuasive argument that not all of its members are subject to such clauses, the Court finds that the Texas forum-selection clauses apply to the franchise agreements presently in question.

### B. New Jersey Franchise Practices Act

Plaintiff argues that its New Jersey-based members[3] are authorized to file suit in the District of New Jersey "because such forum[-]selection clauses are presumptively invalid" under the New Jersey Franchise Practices Act, N.J. Stat. Ann. § 56:10-1, *et seq.* ("NJFPA"). (Compl. ¶ 13.)

The NJFPA authorizes a franchisee to bring an action against its franchisor for engaging in several prohibited practices. N.J. Stat. Ann. § 56:10-10. Plaintiff asserts that its "New Jersey-based franchisees are entitled to bring suit under the NJFPA in New Jersey[,]" and, accordingly, "those members cannot be forced to waive [its] protections" because of a forum-selection clause. (Pl.'s Opp'n Br. 19 (citing *Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 680 A.2d 618,

---

[3] Plaintiff does not specify how many of its members are New Jersey franchisees. (*See generally* Compl.) Plaintiff specifies only that four of its New Jersey franchisee members have not signed Defendant's 2019 proposed amendment to the franchise agreement. (Pl.'s Opp'n Br. 3; *see also* Pl.'s Prelim. Inj. Reply Br. 8, ECF No. 16 ("In particular, at least four (4) of the APFA members are New Jersey franchisees and, therefore, subject to the New Jersey Franchise Protection Act.").)

5

626 (N.J. 1996) ("[E]nforcement of forum-selection clauses in contracts subject to the [NJFPA] would substantially undermine the protections that the [New Jersey] Legislature intended to afford to all New Jersey franchisees. We hold that such clauses are presumptively invalid[.]")).) "*Kubis*[, however,] only applies where . . . a plaintiff asserts a valid claim *under* the [NJFPA]." *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 565–66 (D.N.J. 2000) ("The New Jersey Supreme Court did not intend to extend *Kubis*'s protection to non-[NJFPA] cases. Indeed, *Kubis* did not envision a situation where the purported franchisee failed to assert a valid [NJFPA] claim."). Here, Plaintiff seeks declaratory relief. (*See generally* Compl.) While Plaintiff requests the Court declare that Defendant's conduct constitutes violations of the NJFPA, (*see id.* at 45), the Court is hesitant to conclude that this is a claim alleged *under* the Act. *See Bus. Store, Inc. v. Mail Boxes Etc.*, No. 11-3662, 2012 WL 525966, at *5 (D.N.J. Feb. 16, 2012) ("Importantly, after *Kubis*, courts have applied its rationale *only* in NJFPA cases where a plaintiff asserts a valid claim *under* the NJFPA, particularly in the context of a claim for wrongful termination of a franchise agreement." (emphasis added)); *see also, e.g., id.* at *6 (holding that an agreement was subject to the NJFPA because plaintiff specifically alleged violations of the NJFPA); *Bonanno v. Quiznos Master LLC*, No. 06-1415, 2006 WL 3359673, at *5 (D.N.J. Nov. 17, 2006) (because plaintiffs withdrew their claims that defendant violated the NJFPA, there was a presumption that the forum-selection clause should be enforced).

Even assuming arguendo that Plaintiff's request for declaratory relief alleges a claim under the NJFPA, "the Court must first determine whether the . . . agreement at issue is covered by" the Act. *B-Jays USA, Inc. v. Red Wing Shoe Co.*, No. 15-2182, 2015 WL 5896151, at *4 (D.N.J. Oct. 6, 2015). To qualify for protection under the NJFPA, three criteria must be met: (1) "the performance of the franchise must require the franchisee to establish or maintain a place of business within the State of New Jersey"; (2) "gross sales of products or services between the

franchisor and franchisee shall have exceeded $35,000 for the past [twelve] months"; and (3) "more than 20% of the franchisee's gross sales are derived from the franchise." *Bus. Store*, 2012 WL 525966, at *6. The Complaint does not allege any information about Plaintiff's New Jersey-based members or their gross sales. (*See generally* Compl.) Even assuming the mere fact that they are New Jersey franchisees satisfies prong one of NJFPA analysis, the Court cannot find that prongs two and three are satisfied. *Compare Bus. Store*, 2012 WL 525966, at *6 (holding that the NJFPA governed the franchise agreements in question after plaintiff made undisputed factual assertions that all three criteria were met), *with B-Jays USA*, 2015 WL 5896151, at *4–5 (holding that the NJFPA did not govern the franchise agreement in question because "the record fail[ed] to demonstrate" prong two was met).

The Court, therefore, finds that the franchise agreements at issue are not governed by the NJFPA and, accordingly, does not invalidate the forum-selection clauses on this ground.

### C.    *Forum Non Conveniens*

"[W]here contracting parties have specified the forum in which they will litigate disputes arising from their contract, federal courts must honor the forum-selection clause '[*i*]*n all but the most unusual cases*[.]'" *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 397 (3d Cir. 2017) (emphasis added) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 66 (2013)). In *Atlantic Marine*, the Supreme Court held that 28 U.S.C. § 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." 571 U.S. at 59. Alternatively, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Id.* at 60. Furthermore, the Third Circuit's non-precedential decision in *Podesta v. Hanzel* suggests that "Rule 12(b)(6) dismissal is also an acceptable means of enforcing such a clause when, as here, the clause allows for suit in either a state or federal forum." 684 F. App'x 213, 216 (3d Cir. 2017) (citation omitted).

7

Here, although framed as a motion to dismiss pursuant to Rule 12(b)(6), Defendant invokes the doctrine of *forum non conveniens*. (*See* Def.'s Moving Br. 19–21.) The Court, accordingly, will decide Defendant's Motion pursuant to Rule 12(b)(6), but "alternately views [it] as one to dismiss pursuant to the *forum non conveniens* doctrine[.]" *Breslow v. Klein*, No. 17-6912, 2018 WL 3031854, at *7 (D.N.J. June 19, 2018); *see also Besthoff o/b/o World Water Works Holdings, Inc. v. Mitta*, No. 17-1449, 2018 WL 3425733, at *6 (D.N.J. July 16, 2018) ("*Podesta* also instructed that a court should focus on a motion's function, not its caption. Here, the function of [the defendants'] motion is clearly a dismissal based on *forum non conveniens*. . . . Accordingly, the Court will decide the motion pursuant to Rule 12(b)(6)[,]" but "alternately views the motion as one to dismiss pursuant to the *forum non conveniens* doctrine, without reference to Rule 12(b)(6)." (internal citation omitted)).

"In the typical case not involving a forum-selection clause," a court considering a *forum non conveniens* motion to dismiss "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62; *see also Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (the four factors to consider in *forum non conveniens* analysis are: (1) "the amount of deference to be afforded to plaintiffs' choice of forum"; (2) "the availability of an adequate alternative forum"; (3) "relevant 'private interest' factors affecting the convenience of the litigants"; and (4) "relevant 'public interest' factors affecting the convenience of the forum"). In forum-selection clause cases, however, "the plaintiff's choice of forum merits no weight." *Atl. Marine*, 571 U.S. at 63. Furthermore, a court "should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. "Importantly, the party acting in violation of a valid forum[-]selection clause bears the burden of proving the public interest factors."

8

*Breslow*, 2018 WL 3031854, at *12 (citing *Atl. Marine*, 571 U.S. at 67). Finally, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum," a "transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atl. Marine*, 571 U.S. at 64.

The Court must now decide whether this matter should be dismissed pursuant to the doctrine of *forum non conveniens*. Applying the *Atlantic Marine* framework, Plaintiff's choice of the District of New Jersey is afforded no preference. Second, Plaintiff's private interests, including the location of evidence and availability of witnesses, (*see* Pl.'s Opp'n Br. 22), should not be considered. Third, for public interest factors, Plaintiff asserts that, because the NJFPA applies to Plaintiff's New Jersey-based franchisees, "it would be exceedingly inefficient for all parties, as well as the Court and its sister court(s) in Texas[,] were this matter to be severed and heard in multiple fora" (*Id.* at 23.) The Court, however, holds that the franchise agreements in question are not governed by the NJFPA. Accordingly, the Court finds that Plaintiff has failed to meet its burden of establishing that the public interest factors weigh against dismissal. Furthermore, the Court finds that other relevant public interest factors, including (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) "the relative administrative difficulty in the two fora resulting from court congestion," and (4) "the local interest in deciding local controversies at home," *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995), weigh in favor of dismissal or transfer. *See also Mucciariello v. Viator, Inc.*, No. 18-14444, 2019 WL 4727896, at *8–9 (D.N.J. Sept. 27, 2019) (weighing public interest factors in a forum-selection clause transfer case).

Accordingly, under the *Atlantic Marine* framework, the Court finds that it is inappropriate for this matter to proceed in the District of New Jersey. Because, however, the forum-selection

clauses call for dispute resolution in Texas state or federal court,[4] the Court will transfer the matter to the United States District Court for the Northern District of Texas.[5] *See Breslow*, 2018 WL 3031854, at *1, *13 (transferring forum-selection clause case to federal district court on 12(b)(6) motion to dismiss for *forum non conveniens*).

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted on *forum non conveniens* grounds, but the matter is not dismissed. Instead, the matter is transferred to the United States District Court for the Northern District of Texas. Furthermore, Plaintiff's Motion for a Preliminary Injunction is denied.

s/Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[4] *See, e.g.*, 2016 Franchise Disclosure Doc. *108, *169.

[5] Because the Court transfers this matter to the United States District Court for the Northern District of Texas, it will deny Plaintiff's Motion for a Preliminary Injunction without prejudice. Plaintiff may refile its Motion upon transfer.

10